Marvin SHIPMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–95–00285–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 31, 1996.

Discretionary Review Refused
Feb. 26, 1997.

Joanne M. Eakle, San Antonio, for Appellant.

Lynn Ellison, District Attorney, Jennifer B. Rosenblatt, Allison Bryant, Assistant District Attorney, Jourdanton, for Appellee.

Before RICKHOFF and STONE, JJ., and CHARLES F. CAMPBELL, Former Judge.[1]

1. Assigned to this case by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003(b)(Vernon 1988).

## OPINION

CHARLES F. CAMPBELL, Judge (Assigned).

Pursuant to a plea bargain agreement with the State, appellant pled guilty to the offense of attempted capital murder. In accordance with the plea agreement, the trial court sentenced appellant to forty years confinement in the Texas Department of Criminal Justice, Institutional Division. In harmony with TEX. CODE CRIM. PROC. ANN. art. 44.02 (Vernon 1979), appellant now appeals, in three points of error, an adverse ruling to his pre-trial motion to suppress evidence. We affirm.

Although the sufficiency of the evidence is not challenged, a brief summary of the facts adduced at the suppression hearing is necessary to the disposition of appellant's points of error. On February 8, 1994, at approximately 9:30 P.M., near Lytle, in Atascosa County, a taxi driver, Vasquez, was assaulted with a knife during the course of a robbery. Ten dollars was taken. Vasquez had given the four perpetrators a ride from San Antonio to a subdivision in Atascosa County. There he was robbed and stabbed by four men who wore "gang-type clothing." One of the suspects was described as a Hispanic male, another a white male with a "weird-type, short haircut." Officers with the nearby Lytle Police Department investigated the scene of the crime and interviewed the victim. A blood-soaked newspaper was found near the victim's taxi. Descriptions of the four suspects and their direction of flight from the scene of the crime were broadcast to the surrounding area and to Bexar County. Investigating officers theorized that, because of the amount of blood found at the crime scene, one or more of the suspects, in addition to the victim, had been cut. This information was also broadcast to the surrounding area.

An officer monitoring IH–35 was flagged down by two men who reported seeing two white male subjects, one with a cut hand and one wearing a red jacket, asking for a ride and for directions. They also reported seeing these two subjects join two other subjects and leave on foot. This additional information was broadcast over police radios around the area. At approximately 1:00 A.M., an officer stopped by a gasoline station/food store on IH 35, some five miles from the crime scene, and asked the clerks to be on the lookout for the suspects. Approximately three hours later, one of the clerks at the gas station saw two young men in the store, one with blood on his hand. The clerk saw two other young men standing outside the store. The two men in the store purchased four soft drinks and cigarettes. Five blood-stained one dollar bills were used for the purchase. The man with the blood on his hand attempted to conceal it with his shirtsleeve. The clerk called 911, and officers from Bexar County detained three of the suspects, then found a fourth hiding behind the store. The four suspects were handcuffed and kept in Bexar County squad cars until officers from Lytle arrived twenty minutes later. The suspects were then turned over to Lytle officers. Several hours later, between 10:00 and 11:00 A.M., appellant gave an oral statement that was audio-recorded, then reduced to writing. Appellant signed the written statement admitting his participation in the attempted capital murder of Vasquez.

■ In his first two points of error, appellant complains, in essence, that his seizure[2] by law enforcement officers was illegal under both state and federal constitutions, and under TEX.CODE CRIM. PROC. ANN. art. 1.06 (Vernon 1977). Because appellant has not separated his arguments under the United States Constitution and the Texas Constitution, we will only address these points under the United States Constitution, Texas decisions applying the U.S. Constitution and Texas statutory law. *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991).

### Investigative Detention vs. Custodial Arrest

■ The threshold issue is whether the seizure of appellant can be characterized as

---

**2.** In point of error one, appellant uses the terms "detention, search and seizure," while in points two and three he uses the term "arrest." While the State in its brief indicates a somewhat better understanding of the difference between a temporary detention and an arrest, it too, in several places, intermingles the two concepts. For our purposes, we will outline the difference between the two types of "seizures" (temporary detention and arrest) where necessary.

an investigative detention or a custodial arrest, because the nature of the seizure determines the constitutional parameters which apply to determine its legality. *Amores v. State*, 816 S.W.2d 407, 411 (Tex.Crim.App. 1991). An investigative detention, to be constitutionally valid, may be founded upon a reasonable, articulable suspicion that the person detained is connected with criminal activity, but an arrest, to pass constitutional muster, must be supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing an offense. *Id.*

In the federal jurisprudence, several non-exclusive factors have been identified as being determinative of whether a seizure has elevated into a custodial arrest: 1) the basis for the encounter; 2) whether the encounter was consensual; 3) the duration of the encounter; 4) investigative methods used to confirm suspicions; 5) an officer's statement that the suspect is/is not free to leave; 6) whether weapons are displayed or other force used; 7) the number and demeanor of the officers present at the seizure; 8) the extent of the suspect's restraint; 9) whether the suspect was transported to another location against his will; and 10) whether the suspect was free to leave. *See United States v. Mendenhall*, 446 U.S. 544, 555–56, 100 S.Ct. 1870, 1877–78, 64 L.Ed.2d 497 (1980); *Florida v. Royer*, 460 U.S. 491, 503–04, 103 S.Ct. 1319, 1327–28, 75 L.Ed.2d 229 *United States v. Novak*, 870 F.2d 1345, 1352–53 (7th Cir.1989); *United States v. Hammock*, 860 F.2d 390, 393 (11 Cir.1988).

Texas law contains a statutory definition of an "arrest." Pursuant to TEX.CODE CRIM. PROC. ANN. art. 15.22 (Vernon 1977), a person is arrested under state law when he has been "actually placed under restraint or taken into custody." Our court of criminal appeals has been quite literal in its interpretation of this statute, particularly after its decision in *Amores*. In *Amores*, the court of criminal

appeals held that an arrest occurs when a person's liberty of movement is restricted or restrained.[3] *Amores*, 816 S.W.2d at 411; *see also Burkes v. State*, 830 S.W.2d 922, 925 (Tex.Crim.App.1991); *Hoag v. State*, 728 S.W.2d 375, 379 (Tex.Crim.App.1987).

■ Clearly, the encounter between appellant and the officers was not consensual; the duration of the encounter was six to seven hours; at least one officer testified that appellant was not free to leave; appellant was continuously handcuffed beginning with Bexar County officers and continuing with his transfer to Lytle officers and to the Lytle police station; numerous law enforcement officers were involved in the seizure and ultimate transfer of appellant and his cohorts; and, appellant was interrogated for several hours at the police station. Under either federal or state jurisprudence, it is abundantly clear that appellant was under custodial arrest when he executed his confession. *See Amores*, 816 S.W.2d at 411; *United States v. Mendenhall*, 446 U.S. at 555–56, 100 S.Ct. at 1877–78; *Florida v. Royer*, 460 U.S. at 503–04, 103 S.Ct. at 1327–28.

## Probable Cause

The state argues that even if this court determines appellant's seizure is a custodial arrest, the arrest was based on probable cause and was authorized under TEX.CODE CRIM. PROC. ANN. art. 14.04 (Vernon 1977). In order for police officers to make a warrantless arrest, the State must show the existence of probable cause at the time of the arrest and the existence of circumstances[4] which made the procuring of a warrant impracticable. *Crane v. State*, 786 S.W.2d 338, 346 (Tex.Crim.App.1990). The test for the existence of probable cause is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in

3. This conclusion as to the meaning of custodial arrest is somewhat problematic in that it appears to subsume the concept of temporary detention within its definition. It is hard to imagine a temporary detention that does not involve a person's liberty of movement being restricted or restrained. The very concept of an investigatory detention embodied in *Terry v. Ohio*, 392 U.S. 1,

88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), contemplates that a person's liberty of movement will be restricted or restrained.

4. *See* TEX.CODE CRIM. PROC. ANN. arts. 14.01–14.04 (Vernon 1977 and Supp.1996).

believing that the arrested person had committed or was committing an offense." *Rance v. State,* 815 S.W.2d 633, 635 (Tex.Crim.App.1991)(quoting *Stull v. State,* 772 S.W.2d 449, 451 (Tex.Crim.App.1989)). In applying this standard, we are to look at the "totality of the circumstances" to determine if the officers had a substantial basis for concluding that probable cause existed at the time of the questioned action. *Eisenhauer v. State,* 754 S.W.2d 159, 164 (Tex. Crim.App.1988).

### Art. 14.04—Warrantless Arrest

■ Art. 14.04 provides one of the statutory exceptions to the general rule which requires that an officer obtain a warrant before effecting an arrest. *See generally Dejarnette v. State,* 732 S.W.2d 346, 349 (Tex.Crim.App. 1987). Under Art. 14.04, there are four basic requirements that must be met: 1) the person who gives the information to the peace officer must be credible; 2) the offense must be a felony; 3) the offender must be about to escape; and 4) there must be no time to procure a warrant. *Crane,* 786 S.W.2d at 346.

### Art. 14.04 and Police Broadcasts

■ The test for probable cause in the case of police broadcasts is the information known to the officer who made the broadcast request. *Id.* The requesting officer need not relate all of the relevant facts, but only such information as is necessary for the arresting officer to know who is wanted. *Id.* Police broadcasts, based on probable cause, reporting a felony and a description of the suspect satisfy the requirements for arrest under Art. 14.04. *Id.; see also, Woodward v. State,* 668 S.W.2d 337 (Tex.Crim.App.1982, op. on reh'g), *cert. denied,* 469 U.S. 1181, 105 S.Ct. 939, 83 L.Ed.2d 952 (1985).

### Standard of Review

■ At a suppression hearing, the trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses, as well as the weight to be given their testimony. *DuBose v. State,* 915 S.W.2d 493, 496 (Tex.Crim.App.1996). The trial judge is also the initial arbiter of the legal significance of those facts. *Id.* The court of appeals is to limit its review of the trial court's rulings, both as to the facts and the legal significance of those facts, to a determination of whether the trial court abused its discretion. *Id.* Even if the court of appeals would have reached a different result, as long as the trial court's rulings are at least within the "zone of reasonable disagreement," the appellate court should not intercede. *Id.* at 496–497. When the court of appeals analyzes a trial court's denial of a motion to suppress evidence, it must be deferential to the trial court's judgment, not only as to the historical facts—at least so long as it appears the trial court has applied the correct standard of law to those historical facts. *Id.* at 497. We should reverse a trial court only for an abuse of discretion; i.e., when it appears the trial court applied an erroneous legal standard, or when no reasonable view of the record could support the trial court's conclusion under the current law and the facts viewed in a light most favorable to its legal conclusion. *Id.* at 497–498.

### Application of Law to Facts

■ Viewed in the light most favorable to the trial court's legal conclusion, the record from the suppression hearing in the instant case reveals that the following facts, relevant to Art. 14-04, were known to the arresting officers at the time of the arrest; an attempted capital murder (the victim was robbed of ten dollars) had occurred about 9:30 p.m. in Atascosa County near Lytle; a credible person, the victim, Vasquez, reported the crime to police, his report being supported by forensic evidence found on the victim (stab wound) and at the scene of the crime; the suspects had fled the scene on foot; there was no magistrate immediately available for the procuring of a warrant. The only arguable question is whether the record supports the notion that the appellant was one of the "offender[s]" as contemplated by Art. 14.04, i.e., whether there is sufficient probable cause in the record to show that appellant was one of the offenders.

■ In addition to the evidence outlined above, the record shows the following: 1) one of the suspects wore a red jacket—informa-

tion borne out by the arrest; 2) Vasquez told police that he had taken the four suspects to an Indian Creek Subdivision, in a remote, isolated area; 3) according to the victim, among the four suspects was one Hispanic and one individual with a "weird-type hair-cut" (appellant was described by an arresting officer as having long sideburns and one of his cohorts arrested was Mark Quintana); 4) the four suspects left the scene on foot; 5) a blood-soaked newspaper was found near the victim's taxi, leading police to theorize that one or more of the suspects was wounded, due to the location and small amount of blood observed on the victim; 6) some time after the offense took place, two young males, one with a cut on his hand, and on foot, asked two civilians for a ride and for directions to an Indian Creek Subdivision; 7) these two civilians saw these two young males link-up with two other young males, also on foot; 8) both Lytle and Bexar County law enforcement officers broadcast or heard broadcasts of most of this information on police radios during the night in question [5]; 9) some of these facts were given at 1:00 A.M. to Lydia Ramirez, a clerk at the gas station where the four suspects were arrested; 10) at about 4:00 A.M., Ramirez waited on two young men in the store, having observed two other young men at the side of the store; 11) one of the men paid for merchandise with what appeared to be blood-soaked one dollar bills, while the other young man attempted to conceal a cut on his hand; 12) Ramirez called 911 and reported what she saw; 13) upon arrival at the gas station, Bexar County deputies observed one of the suspects attempting to hide behind the store, while the other three suspects were being detained in front of the store.

The circumstances herein listed were conveyed by radio broadcast or by word of mouth to the arresting officers.[6] While we think the issue of probable cause is a close one, viewed in a light most favorable to the trial court's legal conclusion, and believing that his conclusion is in a "zone of reasonable disagreement," *DuBose*, 915 S.W.2d at 497, we find that appellant's arrest was effectuated in accordance with Art. 14.04 and was supported by probable cause. We overrule appellant's first two points of error.

In his third point of error, appellant, in a multifarious claim,[7] argues that the trial court erred in failing to grant his motion to suppress, citing as reasons violations of the Texas confession statute (Art. 38.22), the Texas statutory exclusionary rule (Art. 38.23), the Fourth, Fifth and Sixth Amendments to the U.S. Constitution, and Art. I, Sec. 9, 10 and 19 of the Texas Constitution. In addition to this point being multifarious, appellant's legal argument only addresses the legality of the arrest. There are no legal arguments advanced at all concerning how the appellant's extra-judicial statements violate Art. 38.22 or the Fifth and Sixth Amendments to the U.S. Constitution. *See* TEX. R.APP. P. 74(f). Therefore, they will not be considered. Remaining is appellant's claim that his extra-judicial statements were obtained after an illegal arrest in violation of the state and federal constitutions. This claim was decided adversely to appellant in our discussion of points of error one and two. Thus, point of error three is overruled.

The judgment of the trial court is affirmed.

RICKHOFF, Justice concurring.

Recognizing that the United State Supreme Court has drawn a line between probable cause for arrest and the facts necessary for a lawful detention, I merely observe that when four individuals are observed by a gas station clerk (two in the store and two outside), and the clerk is already alert because

---

5. Where several officers are involved, the sum of the information known to the cooperating officers at the time of the arrest is considered in determining probable cause. *Garrison v. State*, 726 S.W.2d 134, 137 (Tex.Crim.App.1987).

6. Appellant's reliance on *Brown v. State*, 481 S.W.2d 106 (Tex.Crim.App.1972) is not well-founded. In that case the only probable cause offered by the State was that there were three

males of an approximate size. *Id.* at 110–111. In the instant case, many more facts were known to the arresting officers.

7. A point of error is multifarious if it combines more than one contention in a single point. *Sterling v. State*, 800 S.W.2d 513, 521 (Tex.Crim.App. 1990), *cert. denied*, 501 U.S. 1213, 111 S.Ct. 2816, 115 L.Ed.2d 988 (1991).

they match the number and description of certain suspects he was asked to lookout for by police, and the individuals pay with blood-soaked money, I do not find the issue of probable cause to arrest any of the suspects "a close one." For this reason, I concur in the judgment only.