**Billy Douglas MOORE a.k.a. Bobby Douglas Moore, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 04–00–00414–CR.

Court of Appeals of Texas, San Antonio.

July 18, 2001.

M. Elizabeth Gunn, Asst. Crim. Dist. Atty., Galveston, for Appellee.

Sitting: LÓPEZ, Justice, GREEN, Justice (concurring without opinion) and ANGELINI, Justice.

LÓPEZ, Justice.

The jury found appellant guilty of possession of a firearm by a felon and sentenced him to ten years imprisonment in the Institutional Division of the Texas Department of Criminal Justice. Appellant presents three issues on appeal: (1) that the trial court erred in denying his motion to suppress; (2) that his conviction is not supported by sufficient evidence; and (3) that he received inadequate assistance of counsel during the punishment phase of his trial. We reverse and remand.

### BACKGROUND

On the morning of May 8, 1998, Donald Monacey and Richard Deore were working at a grocery store in Galveston, Texas. At approximately 7:00 a.m., they saw a young African American male ("suspect") enter the store, pick up two five-pound hams, and stuff them into his pants. Monacey shouted to the suspect to stop, but the suspect ran out of the store and into the parking lot. Monacey and Deore chased the suspect, who dropped one of the hams in his haste to flee. The on-foot chase lasted ten blocks until Monacey and Deore lost sight of the suspect. As Monacey and Deore were walking back to the grocery store, they saw the suspect get into the driver's seat of a parked blue Volkswagen in which appellant was a passenger. Just before Monacey and Deore reached the car, the suspect drove off in the Volkswagen. Coincidentally, a customer of the grocery store arrived in a pickup truck and offered to aid Monacey and Deore in the chase. They jumped into the back of the

Thomas W. McQuage, Galveston, for Appellant.

pickup truck and commenced a car chase that lasted some twelve to fourteen city blocks. Bill Scott, a patrolman with the Galveston Police Department, was sitting in his patrol car at an intersection when he saw the Volkswagen, followed by the pickup truck, run a stop sign and speed through the intersection. Scott recognized one of the men in the back of the pickup as being an employee of the grocery store. Both men in the back of the pickup were pointing to the Volkswagen. Scott called dispatch and advised that he was in pursuit of a Volkswagen. Scott stopped the Volkswagen, handcuffed both the suspect and appellant, taking them into "custody." Monacey and Deore told Scott that the suspect had stolen a ham from the grocery store and that appellant had been waiting in the Volkswagen. Scott found the ham in the Volkswagen. Other officers arrived at the scene. One patted down appellant, finding no weapons. A second officer, Lopez, transported the suspect and appellant to the Galveston jail. At the jail, Lopez thoroughly searched appellant's pockets and found three .22 caliber shells. Lopez called Scott and told him that he had found three shells and to search the Volkswagen for a gun. Scott searched the Volkswagen again and found a .22 caliber gun underneath the passenger seat.

## Motion to Suppress

Appellant argues on appeal that the trial court erred in denying his motion to suppress, because Scott did not have the authority to make a warrantless arrest. Scott did not see appellant commit a crime, and the grocery store employees did not accuse appellant of having committed a felony. Therefore, appellant urges that Scott had no authority to arrest appellant without a warrant, and any evidence found as a result of that illegal arrest should have been suppressed pursuant to article 38.23 of the Texas Code of Criminal Proce-

dure. The State responds that appellant was not arrested, only temporarily detained for investigative purposes.

■ We review a trial court's denial of a motion to suppress under an abuse of discretion standard. *Rivera v. State,* 808 S.W.2d 80, 96 (Tex.Crim.App.1991); *In re L.R.,* 975 S.W.2d 656, 657–58 (Tex.App.— San Antonio 1998, no pet.). Under this standard, we "view the evidence in the light most favorable to the trial court's ruling," affording almost total deference to findings of historical fact that are supported by the record. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). However, when the resolution of the factual issue does not turn upon an evaluation of credibility or demeanor, we review the trial court's determination of the applicable law, as well as its application of the appropriate law to the facts it has found, de novo. *Id.*

## Investigative Detention or Arrest?

■ The threshold issue is whether the seizure of appellant can be characterized as an investigative detention or a custodial arrest, because the nature of the seizure determines the constitutional parameters which apply to determine its legality. *Amores v. State,* 816 S.W.2d 407, 411 (Tex.Crim.App.1991); *Shipman v. State,* 935 S.W.2d 880, 882–83 (Tex.App.— San Antonio 1996, pet. ref'd). Both arrests and investigative detentions are types of seizures, each involving varying degrees of restraint on an individual's liberty. *Dean v. State,* 938 S.W.2d 764, 768 (Tex.App.—Houston [14th] 1997, no pet.). "An investigative detention is a temporary and narrowly tailored investigation directed at determining a person's identity or maintaining the status quo while officers obtain more information." *Id.* (citing *Comer v. State,* 754 S.W.2d 656, 657 (Tex.

Crim.App.1986)). In federal jurisprudence, several non-exclusive factors have been identified as being determinative of whether a seizure has elevated into a custodial arrest: (1) the basis for the encounter; (2) whether the encounter was consensual; (3) the duration of the encounter; (4) investigative methods used to confirm suspicions; (5) an officer's statement that the suspect is/is not free to leave; (6) whether weapons are displayed or other force used; (7) the number and demeanor of the officers present at the seizure; (8) the extent of the suspect's restraint; (9) whether the suspect was transported to another location against his will; and (10) whether the suspect was free to leave. *Shipman*, 935 S.W.2d at 883 (citing *United States v. Mendenhall*, 446 U.S. 544, 554–56, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *Florida v. Royer*, 460 U.S. 491, 503–04, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Novak*, 870 F.2d 1345, 1352–53 (7th Cir.1989); *United States v. Hammock*, 860 F.2d 390, 393 (11th Cir.1988)). Moreover, article 15.22 of the Texas Code of Criminal Procedure provides that "[a] person is arrested when he has been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." The Texas Court of Criminal Appeals has interpreted this provision literally, holding that an arrest occurs when a person's liberty of movement is restricted or restrained. *Amores*, 816 S.W.2d at 411.

■ The only evidence before the trial court when it ruled on appellant's motion to suppress was the testimony of Scott. Scott testified that he saw the Volkswagen, followed by the pickup truck, run a stop sign and speed through an intersection. He recognized one of the men in the back of the pickup truck as an employee of the grocery store, who was pointing to the Volkswagen. He stopped the Volkswagen because of the traffic violation, although he admitted that he did not give the driver of the pickup truck a ticket. Scott took both men "into custody." The employees of the grocery store told him that the driver had stolen a ham and that the passenger had been waiting in the Volkswagen. The following exchange between appellant's attorney and Scott occurred during the hearing:

Q: You were stopping them for traffic?

A: That's correct.

Q: Now, did you have-you were by yourself when you made the arrest of these two men?

A: That's correct.

Q: And you put them both into custody?

A: That's correct.

Q: Okay. Now, at the time that you put them into custody, did you have some information that this man right here had made some traffic offense?

A: By the time I put him into custody, there were two more units on the scene. At this time the Kroger's people were on the scene; and then they advised that these people had stole[n] a ham, had been involved in shoplifting in the store.

Q: Did they say that this man stole a ham?

A: They claimed both parties in the vehicle had stolen a ham from the store.

[omitted testimony]

Q: You see a car, a Volkswagen Fox, run a stop sign?

A: Yes.

Q: And that gives you the right under [article] 14.01 [of the Texas Code of Criminal Procedure], an offense within view, to stop that car, right?

A: Certainly.

Q: But this man had not committed any offense, had he?

A: He was in the vehicle.

Q: Are we to take it from [your statement] that [article] 14.01 says that if there's an offense committed within your view, that every occupant of the vehicle may be arrested?

A: No.

Q: Who could be arrested?

A: What is your point?

Q: My question is: If a driver makes a traffic infraction, do you have the right to arrest?

A: I arrested the driver.

Q: Is that the only person you have the right to arrest?

A: I arrested the subject here, too.

Q: Sir, my question is: Who do you have the right to arrest?

A: The driver for the traffic.

Q: The driver for the traffic. Okay. Now, so far this is all that you knew. So when they pulled over for you, that's all that you knew is that [you had] somebody [who] ran the stop sign, right?

A: Right.

Q: Now, then, later on somebody arrived at the scene that you know, and he says, "Those guys stole a ham?" Or, does he say, "Suspect number one [the driver] stole a ham?"

A: He said suspect number one entered the store and removed the ham.

Q: Did he ever indicate that this gentleman right here ever entered the store?

A: No.

Q: He indicated this man did not enter the store, didn't he?

A: He said [appellant] was waiting in the vehicle.

Q: So what evidence did you have at that time that this man had any knowledge of what the man in the store was doing?

A: Because he was with the subject fleeing the store with the ham.

[omitted testimony]

Q: But you just knew that you were going to arrest him for, you're telling us now, for theft of the ham?

A: He was taken into custody and brought to the police station after the investigation.

Q: He was arrested for investigation?

A: The report was made at the police station. It was determined at the police station who got the ham.

Q: I thought you told us that the reason you arrested him at the scene was that these people from Kroger's came and pointed him out and said that-well, not actually him, but they said that the other man had stolen the ham and that this guy is in the car.

A: That's correct.

Q: And you knew at the time that you arrested him that he had never been in the store, according to these reports from these credible and reliable persons, right?

A: No, not really. I didn't find that out until I got to the station and took the report.

Q: So you didn't know who you were arresting for what, did you?

A: No, I didn't know who he was at the scene.

Q: You didn't know at that time why you arrested him?

A: We were investigating the theft at Kroger's at the time.

Q: And that gives you the right to arrest him and take him down to the investigation [police station] if you are investigating something?

A: Sure.

On redirect, the prosecutor attempted to rehabilitate Scott by asking the following:

Q: Had you conducted or completed your investigation of the entire transaction at the scene?

A: No. I hadn't even started at the scene.

Q: But at the time you were given bits and pieces of information?

A: That's correct.

Q: Which included theft, is that correct?

A: That's correct.

Q: From Kroger's?

A: That's correct.

Q: And you knew a ham was recovered?

A: Yes, sir.

Q: And you recovered that ham?

A: Yes, sir.

Q: And you personally observed the individual driving recklessly at a high rate of speed?

A: Yes, sir.

Q: Now, had you had an opportunity to interview all of the employees at Kroger's at the time?

A: No, sir.

Q: So did you know at the time whether or not someone else may have seen the passenger in Kroger's, also?

A: No.

Q: Is that prudent to do at the scene, in your opinion, or is that something more prudent to do at the station?

A: It's more prudent to do it at the station.

Q: So although he was in your custody, was he formally charged with anything at the time he entered the station?

A: No.

Q: He was in your custody for the purpose of what?

A: Investigation of theft.

The Texas Court of Criminal Appeals stressed in *Davis v. State,* 947 S.W.2d 240, 244–45 (Tex.Crim.App.1997), that an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, and the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. Scott's testimony, while inconsistent, demonstrates that Scott made no attempt to investigate at the scene whatsoever. The Texas Court of Criminal Appeals disapproved of such behavior in *Amores v. State,* 816 S.W.2d 407, 412 (Tex.Crim.App.1991), noting that while the officer characterized the initial stop as an investigative detention, there was no investigation conducted.

The record reflects that the officer did not ask the appellant any questions prior to or during the search and seizure conducted of appellant and his vehicles. Neither did the officer ask any questions of Stellmacher [the citizen who called the police and reported what she believed to be suspicious behavior by appellant], at least not until after [the officer] had already seized the blue bag from the car, found the weapon, and conducted an inventory search of the trunk of one of the cars, at which point he already considered the appellant to be under arrest in any event.

*Id.* The court emphasized that the investigative detention contemplated by *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "is one during which the police

are allowed to briefly question a suspicious person respecting his identity, his reason for being in the area or location, and to make similar reasonable inquiries of a truly investigatory nature." *Id.* Because the officer did not conduct an investigation, "the detention can by no means be characterized as investigatory within the meaning of *Terry v. Ohio, supra.*" *Id.; see also Burkes v. State,* 830 S.W.2d 922, 925 (Tex. Crim.App.1991) ("[A]n investigative detention implies that the obtrusive act is for the purpose of actually investigating. Thus, where no investigation is undertaken the detention cannot be considered investigatory and rises to the level of an arrest."); *Rodriguez v. State,* 975 S.W.2d 667, 676–77 (Tex.App.—Texarkana 1998, pet. ref'd) ("Where no investigative questioning precedes an officer's conduct which restricts or restrains a person's liberty of movement, the detention rises to the level of an arrest.").

Like the officer in *Amores,* Officer Scott decided to seize appellant prior to asking any questions. He admitted during the suppression hearing that he did not really know what was happening at the time he took appellant into custody. He admitted that he did not even know if the Kroger's employees were credible or reliable. Instead of conducting an investigation, Scott decided to seize appellant, to allow an officer to pat down appellant, to ask still another officer to transport appellant to the jail where the pockets of his clothing were searched, and to conduct an inventory search of the vehicle. At the time appellant was "taken into custody," there were two other police units besides Scott on the scene, who could have aided Scott in conducting an investigation. This is not a case involving a lone policeman at night who decides to handcuff the suspects because of safety issues. *See Rhodes v. State,* 945 S.W.2d 115, 117–18 (Tex.Crim. App.1997); *In re A.T.,* No. 04–99–00218–

CV, 2000 WL 1918880, at *3 (Tex.App.— San Antonio 2000, no pet.) (not designated for publication). This case involves an officer placing a passenger of a vehicle into custody, patting him down for weapons, and then asking that the passenger be transported, not just to the police station, but to *jail* where the passenger is then searched for the second time. The officer performs all these acts *before* he bothers to conduct an investigation. Even reviewing the evidence in the light most favorable to the trial judge's determination, Scott's testimony during the suppression hearing showed that his conduct elevated the stop of appellant to an arrest.

## WARRANTLESS ARREST

Having found that Scott arrested appellant, we must turn to whether that arrest was legal under Texas law. Warrantless arrests in Texas are authorized only in limited circumstances and are governed primarily by chapter fourteen of the Code of Criminal Procedure. Article 14.01(b), for example, authorizes a warrantless arrest for an offense committed within the officer's presence or view. TEX.CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 1977). The only provision of chapter fourteen that could apply in this case is article 14.04, which provides,

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without a warrant, pursue and arrest the accused.

*Id.* art. 14.04.

 Scott gave conflicting testimony during the suppression hearing regarding what the grocery store employees told him at the time of the initial stop. First, Scott

testified that the employees had stated that both appellant and the driver of the Volkswagen had stolen a ham. Then, when questioned by appellant's attorney, Scott stated that the employees had accused the driver of stealing the ham and appellant of being in the vehicle. Looking at the evidence in the light most favorable to the trial court's decision, we will assume that the employees accused both appellant and the driver of stealing a ham. Scott testified that he had detained appellant for investigation of theft and that the ham alleged to have been stolen was worth $19.95. A person commits a Class C misdemeanor if the value of the property stolen is less than $50. TEX. PEN.CODE ANN. § 31.03(e)(1)(A) (Vernon Supp.2001). Scott testified that stealing a ham worth $19.95 is a misdemeanor. As the employees accused appellant of committing a misdemeanor, Scott had no basis to believe that appellant had committed a felony, let alone that he was about to escape. *See* TEX.CODE CRIM. PROC. ANN. art. 14.04 (Vernon 1977). Therefore, Scott's arrest of appellant was in violation of Texas law.

### EXCLUSIONARY RULE

Article 38.23(a) of the Texas Code of Criminal Procedure provides that "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Appellant was patted down at the scene and then searched thoroughly at the jail. It was during the second search at the jail that Officer Lopez

discovered the shells in the front pocket of appellant's pants. This second search was the result of Scott's arrest of appellant in violation of state law. Thus, the trial court erred in failing to exclude the shells pursuant to article 38.23(a).

As for the gun found underneath the passenger seat, appellant does not have standing to contest the legality of the search of the Volkswagen, because he did not have an ownership interest in the car.[1] A passenger does not have a legitimate expectation of privacy in a vehicle unless he asserts a possessory interest in the vehicle or the property seized. *Meeks v. State*, 692 S.W.2d 504, 510 (Tex.Crim. App.1985); *Morfin v. State*, 34 S.W.3d 664, 666–67 (Tex.App.—San Antonio 2000, no pet.). Therefore, the trial court did not err in failing to suppress the gun.

### HARM ANALYSIS

Having determined that the trial court erred in failing to suppress the shells, we must now consider whether the failure to sustain appellant's motion to suppress amounted to reversible error. In this connection, we must first determine whether the error is constitutional or one that could have affected appellant's substantial rights. TEX.R.APP. P. 44.2(a)-(b). If the error is constitutional, we apply Rule 44.2(a). Otherwise, we must apply Rule 44.2(b) and disregard the error if appellant's substantial rights were not affected. In this case, Scott arrested appellant without a warrant in violation of Texas law, and the shells seized as a result were admitted in evidence in violation of article 38.23. This violation was not constitution-

---

1. Appellant does, however, have standing to challenge Scott's illegal seizure of his person and the search of his pockets at the jail. A passenger has standing to challenge his or her seizure regardless of whether he has an expectation of privacy in the place to be searched. *Morfin v. State*, 34 S.W.3d 664, 667 (Tex.App.—San Antonio 2000, no pet.). Accordingly, appellant had standing to challenge his removal from the car and the search of his person. *Id.*

al in nature, as the appellant does not argue on appeal that Scott did not have probable cause to arrest him for the theft of the ham. *See Fields v. City of South Houston,* 922 F.2d 1183, 1189 (5th Cir. 1991); *Hulit v. State,* 982 S.W.2d 431, 435 (Tex.Crim.App.1998). Appellant only argues that Scott arrested him without a warrant in violation of Texas statutory laws. As such, we must apply Rule 44.2(b) and determine whether the failure to suppress the shells affects the appellant's substantial rights. *See McCuller v. State,* 999 S.W.2d 801, 805 (Tex.App.—Tyler 1999, pet. ref'd) (determining that violation of article 38.23 is not constitutional error); *Yeager v. State,* 23 S.W.3d 566, 576 (Tex. App.—Waco 2000, pet. filed) (applying non-constitutional error harm analysis because source of error was trial court's application of Texas statutory and common law, not its application of constitutional principles). Scott's conduct in arresting appellant infringed on appellant's statutorily protected right to be free, subject to narrowly tailored exceptions, from a warrantless arrest. *Yeager,* 23 S.W.3d at 576. Thus, we find that appellant's right to be free from a warrantless arrest under Texas law is a substantial right. *Id.*

■■■■ The trial court did not commit reversible error, however, unless appellant's substantial right was adversely affected. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (citing with approval *Kotteakos v. United States,* 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)). The Supreme Court in *Kotteakos* stated the following:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment

should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos,* 328 U.S. at 764–65, 66 S.Ct. 1239. The only physical evidence linking appellant to the gun discovered under the passenger seat was the shells erroneously admitted into evidence. Under the "affirmative links" doctrine, "when an accused is not in *exclusive* possession of the *place* where the contraband is found, it cannot be concluded that the accused had knowledge of or control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Cude v. State,* 716 S.W.2d 46, 47 (Tex. Crim.App.1986) (emphasis in original); *see Martin v. State,* 753 S.W.2d 384, 387 (Tex. Crim.App.1988); *Britton v. State,* 793 S.W.2d 768, 770 (Tex.App.—Fort Worth 1990, pet. ref'd). Mere presence alone at a place where contraband is found will not support a conviction for possession. *Martin,* 753 S.W.2d at 387. The State presented circumstantial evidence at trial linking appellant to the gun. Specifically, there was testimony that the gun was found underneath the seat on which appellant had been sitting. However, the crucial evidence offered was the .22 caliber shells that matched the .22 caliber gun. Without the shells, the State had a weak circum-

stantial case, which was based on coincidence and conjecture. Moreover, the car in which the gun was recovered was not owned by appellant. Thus, the admission of the shells had a substantial effect in determining the jury's verdict. We find that the trial court's error affected appellant's substantial rights. Appellant's first issue is sustained.

### CONCLUSION

Because we have sustained the first issue, it is not necessary for us to reach the merits of appellant's other two issues, and we decline to do so. *See* TEX.R.APP. P. 47.1. We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.