

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00488-CR

CAROLINE ELISE LEWIS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the County Court at Law No. 1
Randall County, Texas
Trial Court No. 2011-0722-1, Honorable James W. Anderson, Presiding

September 30, 2013

## OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Caroline Elise Lewis, appeals her conviction for the offense of driving while intoxicated,[1] and resulting sentence of ninety days incarceration in the Randall County Jail, suspended for a period of nine months, and $500 fine. We will affirm.

---

[1] See TEX. PENAL CODE ANN. § 49.04 (West Supp. 2012).

Factual and Procedural Background

At approximately 3:20 a.m. on September 16, 2011, Canyon police officer Tyler Smith received a dispatch in reference to a hit-and-run accident. When Smith arrived, he interviewed an eyewitness to the accident that reported that a small gray SUV collided with a parked car.

Approximately thirty minutes after Smith arrived at the scene of the accident, a tan Suburban pulled up. Appellant's fiancé, Mark Glawe, exited the Suburban and initiated a conversation with Smith. Smith asked Glawe if he was responsible for the accident and Glawe stated that he was. However, as Smith questioned Glawe about the accident, Smith became skeptical of Glawe's admission. Eventually, Glawe disavowed his admission of guilt and informed Smith that it was his girlfriend, appellant, that had run into the car. Appellant was sitting in the passenger seat of the Suburban that Glawe had arrived in.

Smith then approached appellant while she remained seated in the Suburban. When Smith asked appellant what happened, she began crying hysterically and admitted that she was the one that had collided with the parked car. During this brief exchange, Smith detected the odor of alcohol emanating from appellant. In response to further questioning, appellant admitted that she had "had too much to drink." At this point, Smith placed appellant in the back seat of his patrol car.

Smith did not perform any field sobriety tests at the scene because he felt the weather was such that performing the tests would not be safe. Smith had another officer transport appellant to the Randall County Correctional Facility where sobriety

2

tests were performed and a breath test was administered. Prior to placing appellant in the back seat of the other officer's vehicle, Smith handcuffed appellant.

Appellant was charged with the offense of driving while intoxicated. Prior to trial, appellant filed a motion to suppress evidence contending, *inter alia*, that evidence was acquired after she was illegally detained and arrested. The trial court held a hearing on appellant's motion to suppress. Smith was the only witness to testify at this hearing. At the conclusion of the hearing, the trial court denied appellant's motion. Appellant subsequently entered an open plea of *nolo contendere* while preserving her right to appeal the denial of her motion to suppress. The trial court accepted appellant's plea, and sentenced appellant to ninety days incarceration in the Randall County Jail, suspended for nine months, and a $500 fine. Appellant timely appealed.

By two issues, appellant challenges the trial court's denial of her motion to suppress. By her first issue, she contends that the trial court's ruling was erroneous because appellant was "unlawfully seized" when she was detained at the scene of the accident, and when she was subsequently arrested. By her second issue, appellant contends that the trial court's ruling was erroneous because appellant was arrested for driving while intoxicated but no witness ever saw appellant drive. However, because appellant's two issues interrelate, we will address them together.

Standard of Review

Both of appellant's issues challenge the trial court's ruling on her motion to suppress. When reviewing a trial court's decision on a motion to suppress, we apply a bifurcated standard of review, giving almost total deference to a trial court's

3

determination of historical facts and reviewing the court's application of search and seizure law *de novo.* Maxwell v. State*,* 73 S.W.3d 278, 281 (Tex.Crim.App. 2002); Guzman v. State*,* 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The trial court is the sole judge of the credibility of the witnesses and their testimony. Maxwell*,* 73 S.W.3d at 281. When, as here, the trial court does not file findings of fact, we view the evidence in the light most favorable to the trial court's ruling, and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000) (citing Carmouche v. State, 10 S.W.3d 323, 328 (Tex.Crim.App. 2000)). If the trial court's decision is correct under any theory of law applicable to the case, the decision will be sustained. Id. at 855-56 (citing Romero v. State, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990)).

Appellant bears the initial burden of proving that a warrantless search or seizure occurred. See Bishop v. State*,* 85 S.W.3d 819, 822 (Tex.Crim.App. 2002) (en banc). Once this burden has been met, the burden shifts to the State to show that the search or seizure was reasonable. Id*.* For purposes of constitutional analysis, both investigative detentions and arrests are seizures. Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App. 1995). The differences between the two types of seizures are the degree of intrusion involved and the different legal justifications required. Id.

Confrontation

A law enforcement officer is permitted to approach a citizen and ask questions without reasonable suspicion or probable cause. Id. (citing Florida v. Royer, 460 U.S. 491, 497-98, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). These sorts of consensual

4

confrontations are acceptable so long as a reasonable person would feel free to disregard the police and go about her business. Id. However, when the citizen yields to a display of authority under circumstances in which a reasonable person would believe that she was not free to leave, an investigative detention has occurred. Kelm v. State, No. 03-07-00047-CR, 2007 Tex. App. LEXIS 8851, at *7 (Tex.App.—Austin Nov. 9, 2007, no pet.) (mem. op., not designated for publication) (citing Johnson, 912 S.W.2d at 236).

In the present case, Smith had no contact with appellant until after Glawe fabricated a story about having driven the car that collided with the parked vehicle followed by his admission that it was appellant that had been driving. At this point, Smith approached appellant, who remained in the Suburban while Smith asked her "what had happened." Under the circumstances, this was a consensual confrontation. While it is true that Smith testified that appellant was not free to leave at that time, appellant did not yield to a display of authority. As a result of Smith's question, appellant "kind of broke down" emotionally and admitted the accident was her fault. At this time, Smith detected an "odor of alcohol" emanating from appellant. Glawe and appellant also both admitted that appellant "had too much to drink" prior to the accident. Each of these specific articulable facts were obtained by Smith during this consensual confrontation.

Detention or Arrest

After obtaining the above-identified information, Smith placed appellant in his patrol car while he finished his investigation of the accident. After another officer arrived

5

at the scene, Smith removed appellant from his patrol car, placed her in hand restraints, and had the other officer transport appellant to the Randall County Correctional Facility for sobriety testing. We must first decide whether this seizure of appellant's person was an investigative detention or a custodial arrest because the nature of the seizure determines the constitutional parameters that apply in determining its legality. See Moore v. State, 55 S.W.3d 652, 655 (Tex.App.—San Antonio 2001, no pet.).

Whether a seizure of a person is an investigative detention or an arrest depends upon the facts and circumstances surrounding the seizure. See Amores v. State, 816 S.W.2d 407, 412 (Tex.Crim.App. 1991). "An investigative detention, to be constitutionally valid, may be founded upon a reasonable, articulable suspicion that the person detained is connected with criminal activity . . . but an arrest, to pass constitutional muster, must be supported by the greater conclusiveness of probable cause to believe that a particular person has committed or is committing an offense." Id. at 411. "A person is arrested when he has been actually placed under restraint or taken into custody by an officer . . . ." TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2005).[2] In assessing whether a seizure is an investigative detention or an arrest, we look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. Rhodes v. State, 945 S.W.2d 115, 118 (Tex.Crim.App. 1997). Handcuffing alone will not necessarily convert a temporary detention into an arrest. See id. at 117-18. Police may use such force as is reasonably necessary to effectuate the goal of the

---

[2] Further reference to provisions of the Texas Code of Criminal Procedure will be by reference to "article ___" or "art. ___."

detention, whether that be investigation, maintenance of the status quo, or officer safety. Id. at 117.

Certain non-exclusive factors that can be used to determine whether a seizure has elevated into a custodial arrest include: (1) the basis for the encounter; (2) whether the encounter was consensual; (3) the duration of the encounter; (4) investigative methods used to confirm suspicions; (5) whether officers informed the suspect that she was or was not free to leave; (6) whether weapons were displayed or other force was used; (7) the number and demeanor of officers present at the seizure; (8) the extent of the suspect's restraint; (9) whether the suspect was transported to another location against her will; and (10) whether the suspect was free to leave. Moore, 55 S.W.3d at 656.

The State contends that appellant was simply detained until after sobriety tests were administered and appellant's breath was tested because these actions were investigatory. The State's position draws some support under the Moore factors. The encounter was initiated by Glawe while Smith was investigating a hit-and-run accident. The encounter between Smith and appellant was consensual. Smith did not display any weapons or use any force to obtain appellant's compliance. There was only one officer at the scene until a second officer arrived to transport appellant to the Randall County Correctional Facility for sobriety testing. While appellant was transported to another location against her will, the reason that she was taken to the Randall County Correctional Facility was because Smith felt that the weather would prevent him from performing field sobriety tests on appellant safely. These factors suggest that appellant was being detained to allow Smith to further investigate whether she had committed the

7

offense of driving while intoxicated through the point when sobriety tests were administered at the Randall County Correctional Facility.

However, consideration of the remaining Moore factors leads this Court to conclude that appellant was placed under arrest before she was transported to the Randall County Correctional Facility. It appears that the encounter between Smith and appellant lasted approximately 45 minutes, and that appellant was secured in the back seat of Smith's patrol car for the majority of that time. Smith testified that he requested another officer to transport appellant to the Randall County Correctional Facility but, while waiting on this other officer to arrive, Smith was not actually investigating whether appellant had committed the offense of driving while intoxicated.[3] While Smith did not inform appellant that she was or was not free to leave, his actions were sufficient to convey that she was not free to leave. Further, Smith testified that he would not have allowed appellant to leave had she expressed her desire to do so. Finally, when Smith removed appellant from the back seat of his patrol car to transfer her to the other officer's car, he placed appellant in handcuffs. Smith provided no reasonable explanation as to why he placed appellant in handcuffs at this time. When we consider the totality of the circumstances, we conclude that appellant was arrested at least by the time that Smith removed her from his patrol car, placed handcuffs on her, and had her transported to the Randall County Correctional Facility against her will.

---

[3] It appears that Smith was arranging for the parked vehicle that appellant collided with to be towed during this time.

8

Lawfulness of Arrest

While we have concluded that appellant was placed under arrest prior to the administration of sobriety and breath testing, we further conclude that this warrantless arrest of appellant was authorized by article 14.03(a)(1) of the Texas Code of Criminal Procedure.[4] See art. 14.03(a)(1) (West Supp. 2012).

Warrantless arrests are authorized only in limited circumstances outlined primarily in Chapter 14 of the Texas Code of Criminal Procedure. Swain v. State, 181 S.W.3d 359, 366 (Tex.Crim.App. 2005). One of these exceptions, article 14.03(a)(1), authorizes the warrantless arrest of an individual found in a suspicious place under circumstances reasonably showing the individual committed a breach of the peace. See art. 14.03(a)(1). Driving while intoxicated is a breach of the peace. See Miles v. State, 241 S.W.3d 28, 42 (Tex.Crim.App. 2007) (citing Romo v. State, 577 S.W.2d 251, 252-53 (Tex.Crim.App. 1979)).

"[T]he test under [a]rticle 14.03(a)(1) is a totality of the circumstances test. First, probable cause that the defendant committed a crime must be found and second, the defendant must be found in a 'suspicious place.'" Dyar v. State, 125 S.W.3d 460, 468

---

[4] Appellant's arguments rely heavily on Kelm, 2007 Tex. App. LEXIS 8851, at *13-14, and that opinion's analysis of whether a warrantless arrest was authorized by article 14.01(b) in a somewhat similar factual scenario. However, because the trial court did not enter findings of fact and conclusions of law in this case, we are required to affirm if the trial court's decision is correct under any theory of law applicable to the case. Ross, 32 S.W.3d at 855-56. Concluding that the trial court's ruling was correct under article 14.03(a)(1), we need not and do not address appellant's argument regarding the applicability of article 14.01(b) to appellant's warrantless arrest. Further, under article 14.03(a)(1), Smith was not required to see appellant operate a motor vehicle as a condition to arresting her without a warrant. As such, we need not address appellant's second issue.

(Tex.Crim.App. 2003). Probable cause for a warrantless arrest exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. See Amador v. State, 275 S.W.3d 872, 878 (Tex.Crim.App. 2009). We review whether the State has carried its burden of proving whether probable cause existed *de novo*. See Paulea v. State, 278 S.W.3d 861, 865 (Tex.App.—Houston [14th Dist.] 2009, pet. ref'd). In conducting this review, we are to consider the totality of the circumstances surrounding the arrest. See id.

In the present case, Smith possessed probable cause to believe that appellant had committed the offense of driving while intoxicated by the time that appellant was arrested. The facts upon which probable cause is predicated include Glawe's fabricated story, recantation of that story, and implication of his girlfriend having caused the hit-and-run accident; appellant's admission that she was operating the vehicle that ran into the parked vehicle; appellant's flight from the scene of the accident; Smith's detection of the odor of alcohol emanating from appellant; appellant's highly emotional state; and appellant's admission she "had too much to drink." Considering the totality of the circumstances surrounding appellant's warrantless arrest, we conclude that Smith possessed reasonably trustworthy information sufficient to warrant a reasonable belief that appellant had committed the offense of driving while intoxicated. See Dyar, 125 S.W.3d at 468 (probable cause based on officer being informed that driver in one-car accident was taken to hospital, officer found appellant at hospital, appellant exhibited many characteristics of being intoxicated, and appellant admitted to drinking and driving); Perez v. State, Nos. 10-09-00022-CR through 10-09-00024-CR, 2010 Tex.

10

App. LEXIS 6984, at *5 (Tex.App.—Waco Aug. 25, 2010, no pet.) (mem. op., not designated for publication) (probable cause of DWI based on appellant's performance of field sobriety tests, and his admission that he had been drinking, driving, and in the traffic accident); Cribley v. State, No. 04-04-00047-CR, 2005 Tex. App. LEXIS 6078, at *3 (Tex.App.—San Antonio Aug. 3, 2005, no pet.) (mem. op., not designated for publication) (probable cause of DWI based on appellant's admission of involvement in auto accident, smell of alcohol on appellant's breath, and admission by appellant that she had consumed about six beers).

However, for appellant's warrantless arrest to be justified under article 14.03(a)(1), the State must also prove that appellant was found in a suspicious place. See Dyar, 125 S.W.3d at 468. Few places, if any, are inherently suspicious. Id. at 464-65. The determination of whether a place is suspicious requires a highly fact-specific analysis. Id. at 468. Any place may become suspicious when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual committed a crime and exigent circumstances call for immediate action or detention by the police. Swain, 181 S.W.3d at 366. A key factor in determining whether a place is suspicious is how much time has passed between the crime and the apprehension of the suspect. See Dyar, 125 S.W.3d at 468.

Based on the facts present in this case, we conclude that the scene of the hit-and-run accident was a suspicious place. Clearly, the scene of the hit-and-run was the scene of a crime. When appellant voluntarily returned to the scene, admitted that she had been driving the vehicle that collided with the parked vehicle, and further admitted that she had had too much to drink before the accident, Smith could reasonably believe,

11

based on the surrounding circumstances, that appellant had committed the offense of driving while intoxicated. See Banda v. State, 317 S.W.3d 903, 912 (Tex.App.—Houston [14th Dist.] 2010, no pet.). Further, Smith needed to take prompt action to ascertain appellant's blood-alcohol level. See Sandoval v. State, 35 S.W.3d 763, 769 (Tex.App.—El Paso 2000, pet. ref'd) ("Proving intoxication is an essential element of the offense [of driving while intoxicated], and testing for alcohol levels is a time-sensitive matter."). The relatively short amount of time elapsed between the collision and appellant's return to the scene—approximately 30 minutes to an hour—also supports the conclusion that appellant was found in a suspicious place. See Johnson v. State, 722 S.W.2d 417, 419-21 (Tex.Crim.App. 1986) (finding location to be a suspicious place two hours after murder committed there).

Because the totality of the circumstances show that Smith possessed probable cause to believe that appellant had committed the offense of driving while intoxicated, appellant was found in a suspicious place, and exigent circumstances called for immediate action by Smith, we conclude that appellant's warrantless arrest was justified under article 14.03(a)(1). See art. 14.03(a)(1); Swain, 181 S.W.3d at 366; Dyar, 125 S.W.3d at 468. Consequently, appellant was lawfully arrested prior to being transported to the Randall County Correctional Facility for sobriety and breath testing.

## Conclusion

After reviewing the record in the light most favorable to the trial court's ruling, we conclude that the trial court did not err in denying appellant's motion to suppress evidence because it is supported by the evidence and legally correct. See Ross, 32

S.W.3d at 855-56.  We affirm the judgment of the trial court.  <u>See</u> TEX. R. APP. P. 43.2(a).


                                              Mackey K. Hancock
                                                  Justice


Publish.