# NO. 12-12-00092-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *TERRY SHANNON BAKER,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

The State of Texas appeals the trial court's order granting a motion to suppress evidence filed by Terry Shannon Baker, Appellee. In three issues, the State argues that a blood draw was obtained lawfully from Appellee, that exigent circumstances existed warranting the taking of an involuntary blood sample, and that Appellee consented to the blood draw. We affirm.

## BACKGROUND

Appellee was indicted for intoxication assault. He filed a motion to suppress evidence, arguing that the evidence was unlawfully obtained. At the suppression hearing, the evidence showed that on June 13, 2009, Texas Parks and Wildlife Game Wardens Shawn Smith and John Thorne responded to a 911 call concerning a jet ski accident on Cedar Creek Lake. There were several people at the scene, and the game wardens interviewed witnesses.

Warden Smith was advised by paramedics that the injured party "was not in good shape." The game wardens described the scene as a "bad situation," and said they were unsure whether the victim would survive. Appellee was on a boat in the water with other people when the game wardens arrived. Witnesses pointed at Appellee and identified him as the operator of the jet ski involved in the accident. At approximately the same time, the boat docked. Appellee tied the boat down, walked over to the game wardens, and admitted that he had been operating the jet ski

at the time of the incident. The game wardens detected the strong odor of alcohol on Appellee's breath, and noted that his eyes were bloodshot and watery. Appellee admitted to Warden Smith that he had consumed "four or five" beers that day. Warden Thorne saw a trash bag full of beer cans on the side of the pier, and he was "told" that they came from the boat Appellee was on. But Warden Thorne did not name the person who made the statement. However, the game wardens stated that they interviewed other witnesses and Appellee was the only person who smelled of alcohol. Warden Thorne also observed blood inside the boat that Appellee had just tied to the pier, but he did not identify the blood's source.

Based on this information, Warden Smith told Appellee that he needed to accompany them to East Texas Medical Center (ETMC) to provide a mandatory blood specimen for testing. Appellee asked to give a breath sample, and Warden Smith told him that a blood specimen was required. Appellee acquiesced and was placed in Warden Smith's vehicle. He was not read his constitutional rights or the "DIC 24" statutory warning. While Appellee was at ETMC, a nurse presented him with an ETMC-supplied form, which stated that "this form is to be completed when blood sample(s) are taken from a patient, at the request of the Law Enforcement Agency, for the purpose of testing the blood for alcohol content." Appellee signed the form. A blood sample was taken, and the test showed that he had a blood alcohol concentration of 0.09. Warden Thorne then conducted field sobriety tests (FSTs) on Appellee and concluded that Appellee exhibited four out of six clues on the horizontal gaze nystagmus test, zero out of four clues on the one-leg stand, and two out of eight clues on the walk and turn test.[1] At that point, Warden Smith informed Appellee that he was "formally" under arrest and read his rights.

After the suppression hearing, the trial court granted the motion. The trial court also made express findings of fact and conclusions of law, including that (1) the game wardens lacked probable cause to effect the arrest when the blood sample was taken, (2) Appellee was not placed under arrest until after he performed the FSTs, (3) the game wardens failed to follow the statutory procedures in obtaining mandatory blood draws without warrants and misstated the law to Appellee concerning involuntary blood samples, (4) the State failed to present evidence of

---

[1] The game wardens testified that they did not conduct standard FSTs at the scene because the geographic features were unsuitable due to the hilly conditions. They also stated they elected not to perform the tests at the scene because they were on private property and there were a large number of people in the area. They concluded that ETMC would be a more suitable place to conduct the tests. However, Warden Thorne acknowledged that there were other nonstandardized FSTs that he could have conducted at the scene, but did not.

exigent circumstances justifying the warrantless acquisition of the blood sample, and (5) the State failed to prove that Appellee voluntarily consented to the procedure. The State appealed.

## MANDATORY BLOOD DRAW UNDER IMPLIED CONSENT STATUTE

In its first issue, the State contends that the game wardens had probable cause to arrest Appellee and that he was under arrest at the time the blood specimen was requested. Consequently, its argument continues, Chapter 724 governing warrantless mandatory blood draws applies, the game wardens complied with the statute, and the trial court abused its discretion in concluding otherwise.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State,* 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard. *Shepherd v. State,* 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). The trial court is given almost complete deference in its determination of historical facts, especially if they are based on an assessment of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). The same deference is afforded the trial court with respect to its rulings on application of the law to questions of fact and to mixed questions of law and fact, if resolution of those questions depends on an evaluation of credibility and demeanor. *Id.* However, for mixed questions of law and fact that do not fall within that category, a reviewing court conducts a de novo review. *Id.*

At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. *Maxwell v. State,* 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. *State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *State v. Kurtz,* 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

We view all of the evidence in the light most favorable to the trial court's ruling. *State v. Castleberry,* 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). Therefore, the prevailing party is entitled to "the strongest legitimate view of the evidence and all reasonable inferences that may

be drawn from that evidence." *Id.* Since all evidence is viewed in the light most favorable to the trial court's ruling, we are obligated to uphold its ruling on a motion to suppress if that ruling is supported by the record and is correct under any theory of law applicable to the case. *Ross,* 32 S.W.3d at 856; *Carmouche,* 10 S.W.3d at 327; *State v. Ballard,* 987 S .W.2d 889, 891 (Tex. Crim. App. 1999); *Maysonet v. State,* 91 S.W.3d 365, 369 (Tex. App.—Texarkana 2002, pet. ref'd).

Moreover, if, as here, the trial judge makes express findings of fact, we view the evidence in the light most favorable to his ruling and determine whether the evidence supports those factual findings. *Valtierra v. State,* 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Then, we review the trial court's legal conclusions de novo and uphold the ruling so long as it is supported by the record and correct under any legal theory applicable to the case. *State v. Iduarte,* 268 S.W.3d 544, 548 (Tex. Crim. App. 2008); *Banda v. State,* 317 S.W.3d 903, 907–08 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

**Applicable Law**

**1. Mandatory Blood Specimens Without Warrants in DWI Investigations**

The taking of a blood sample is a search and seizure under both the federal and Texas constitutions. *Aliff v. State,* 627 S.W.2d 166, 169 (Tex. Crim. App. 1982). However, under certain circumstances, a blood sample taken without a warrant is not an unreasonable search and seizure, and therefore comports with constitutional requirements. *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S. Ct. 1826, 1836, 16 L. Ed. 2d 908 (1966). Police officers may constitutionally obtain a blood sample without a warrant or consent if they have probable cause, exigent circumstances, and a reasonable method of extraction. *Id.*; *see Aliff,* 627 S.W.2d at 169–70.

In Texas, there are also statutory requirements that may apply when a person is arrested for an intoxication related offense. *See* TEX. TRANSP. CODE ANN. §§ 724.011-.013 (West 2011), 724.015 (West Supp. 2012); *State v. Laird*, 38 S.W.3d 707, 713-14 (Tex. App.—Austin 2000, pet. ref'd). Texas's implied consent statute governs the state's ability to obtain a breath or blood sample from a person arrested for an intoxication related offense and provides that an arrested suspect has impliedly consented to the taking of a sample in certain circumstances. *State v. Johnston,* 336 S.W.3d 649, 661 (Tex. Crim. App. 2011). Particularly, the statute provides in relevant part as follows:

4

(a) One or more specimens of a person's breath or blood may be taken if the person is arrested and at the request of a peace officer having reasonable grounds to believe the person: (1) while intoxicated was operating . . . a watercraft . . . .

(b) A peace officer shall require the taking of a specimen of the person's breath or blood under any of the following circumstances if the officer arrests the person for an offense under Chapter 49, Penal Code, involving the operation of . . . a watercraft and the person refuses the officer's request to submit to the taking of a specimen voluntarily:

(1) the person was the operator of . . . a watercraft involved in an accident that the officer reasonably believes occurred as a result of the offense and, at the time of the arrest, the officer reasonably believes that as a direct result of the accident:

(A) any individual has died or will die;
(B) an individual other than the person has suffered serious bodily injury; or
(C) an individual other than the person has suffered bodily injury and been transported to a hospital or other medical facility for medical treatment . . . .

TEX. TRANSP. CODE ANN. § 724.012(a), (b)(1) (West 2011).

The consent is not implied absent an arrest. *Knisley v. State*, 81 S.W.3d 478, 482 (Tex. App.—Dallas 2002, pet. ref'd). The implied consent law expands on the state's search capabilities by providing another framework for obtaining a specimen of a DWI suspect's blood. *Beeman v. State*, 86 S.W.3d 613, 615-16 (Tex. Crim. App. 2002). The arrest must still meet minimum constitutional standards. *See State v. Johnston*, 336 S.W.3d 649, 661 (Tex. Crim. App. 2011) (transportation code chapter 724 does not dictate what is constitutionally permissible); *State v. Mosely*, 348 S.W.3d 435, 442 (Tex. App.—Austin 2011, pet. ref'd) (Chapter 724 does not authorize what the constitution forbids and cannot authorize an involuntary draw when the constitution forbids it); *Knisley*, 81 S.W.3d at 483 (statutory requirements for blood sampling supplement, not reduce, constitutional requirements). Thus, in the absence of a valid search warrant or actual consent, full compliance with Chapter 724 is required, even though the sample is taken from the arrested suspect with probable cause under exigent circumstances. *See Mosely*, 348 S.W.3d at 442 (stating that warrantless blood draw under Chapter 724 is legal only if the arrest is supported by probable cause); *Laird*, 38 S.W.3d at 713 ("Texas courts require full compliance with the provisions of Chapter 724 when a blood sample is taken from an arrested suspect even though exigent circumstances exist.").

2. **Arrests**

There are three types of interactions among police officers and citizens: (1) consensual encounters; (2) investigative detentions; and (3) arrests or their custodial equivalent. *Crain v.*

*State,* 315 S.W.3d 43, 49 (Tex. Crim. App. 2010). Both a detention and an arrest involve a restraint on one's freedom of movement; the difference is in degree. *State v. Sheppard,* 271 S.W.3d 281, 290-91 (Tex. Crim. App. 2008). An arrest is a greater degree of restraint on an individual's freedom of movement than is an investigative detention. *Id.* at 290. The test for whether a person has been arrested is whether the facts demonstrate the individual's liberty of movement was actually restricted or restrained. TEX. CODE CRIM. PROC. ANN. art. 15.22 (West 2005); *Amores v. State,* 816 S.W.2d 407, 411-12 (Tex. Crim. App. 1991).

When determining the type of seizure at issue, we consider the totality of the circumstances. *State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.). We use an objective standard when making this determination, disregarding the officer's subjective intent unless it is manifested to the suspect. *Id.* Because this determination is made on an ad hoc basis, there is no bright line test for distinguishing between a detention and an arrest. *Sheppard,* 271 S.W.3d at 291. Instead, "common sense and ordinary human experience must govern over rigid criteria." *Balentine v. State,* 71 S.W.3d 763, 771 (Tex. Crim. App. 2002).

The Texas Court of Criminal Appeals has provided a list of factors that are properly considered when determining whether the seizure was a detention or an arrest for Fourth Amendment purposes:

> (1) the amount of force displayed, (2) the duration of the detention, (3) the efficiency of the investigative process and whether it is conducted at the original location or the person is transported to another location, (4) the officer's expressed intent—that is, whether he told the detained person that he was under arrest or was being detained only for a temporary investigation, and (5) any other relevant factors.

*Sheppard,* 271 S.W.3d at 291 (footnotes omitted). Additional factors Texas courts have found relevant when determining the reasonableness of a detention include the nature of the crime under investigation, the degree of suspicion, the location of the stop, the time of day, the number of suspects present, the reaction of each suspect, and whether the officer actually conducted an investigation. *See Bartlett v. State,* 249 S.W.3d 658, 669 (Tex. App.—Austin 2008, pet. ref'd); *Akins v. State,* 202 S.W.3d 879, 885 (Tex. App.—Fort Worth 2006, pet. ref'd).

### 3. **Probable Cause**

In the context of a warrantless arrest, probable cause exists "if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge and of which he has

reasonably trustworthy information are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense." *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). "Probable cause requires an evaluation of probabilities, and probabilities 'are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. Ed. 1879 (1949)).

"The rule of probable cause seeks to accommodate the sometimes opposing interests of safeguarding citizens from rash and unreasonable police conduct and giving fair leeway to legitimate law enforcement efforts." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Probable cause is not a "finely tuned standard" but is instead a "fluid concept," and its "substantive content" is derived from "the particular context[ ] in which" it is assessed. *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661, 134 L. Ed. 2d 911 (1996).

"The test for probable cause is an objective one, unrelated to the subjective beliefs of the arresting officer, and it requires a consideration of the totality of the circumstances facing the arresting officer." *Id.* "This means that a 'divide-and-conquer' or piecemeal approach [to the evidence] is prohibited." *Wiede*, 214 S.W.3d at 25. "The subjective intent or motivations of law enforcement officials [are] not taken into account when considering the totality of the circumstances." *Id.* "But the training, knowledge, and experience of law enforcement officials is taken into consideration." *Id.*

The state does not have to prove that the defendant actually was intoxicated in order to justify an arrest. *See Illinois v. Gates*, 462 U.S. 213, 235, 103 S. Ct. 2317, 2330, 76 L. Ed. 2d 527 (1983) ("It is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'"). A finding of probable cause requires "more than bare suspicion" but "less than . . . would justify . . . conviction." *Amador*, 275 S.W.3d at 878. In the context of a DWI arrest, Texas courts have held that probable cause to arrest exists where the defendant is involved in a collision and a law enforcement officer detects the strong odor of alcohol on his breath. *See, e.g., Pesina v. State*, 676 S.W.2d 122, 127 (Tex. Crim. App. 1984) (recognizing that officer had probable cause to arrest defendant where defendant was involved in a collision with another vehicle and had a strong odor of alcohol on his breath); *see also State v. May*, 242 S.W.3d 61, 61 (Tex. App.—San Antonio 2007, no pet.) (reversing trial court's

suppression order where evidence of intoxication included officer's observations that defendant had collided with another vehicle and "smelled of alcohol at the time of her accident").

**Discussion**

### 1. Nature of Detention

We first address whether Appellee was under arrest at the time the involuntary blood sample was taken. The dispute concerns whether the facts lead to the legal conclusion that Appellee was under arrest when he provided the blood sample, which we review de novo. *See Dixon v. State*, 206 S.W.3d 613, 616 (Tex. Crim. App. 2006). Warden Smith testified at the suppression hearing that after conducting his initial investigation at the scene, he told Appellee that he was required to accompany him to ETMC in order to provide a blood specimen. Specifically, Warden Smith testified as follows:

> Q. Now, [Appellee] said that he would rather do breath because he wouldn't do very well on blood; is that correct?
>
> A. Correct.
>
> . . . .
>
> Q. You told him when he asked if he could give breath, you told him that it was mandatory blood because there was serious bodily injury?
>
> A. Yes, sir.
> . . . .
>
> Q. Did you tell him that he had to go to the hospital?
>
> A. Yes, sir.
>
> Q. Did you tell him that he had to give blood?
>
> A. Yes, sir.
>
> Q. In fact, in your affidavit you said that it was mandatory?
>
> A. Correct.

Warden Thorne testified about Warden Smith's statements to Appellee, stating that

> I don't remember his exact words, but he said, we need to go get a blood sample, something to that effect. And [Appellee] I believe responded, well, could we do breath? And Warden Smith said, no, it's got to be blood because there has been an accident with serious bodily injury.

Appellee was transported to the hospital in Warden Smith's vehicle without being placed in handcuffs. Being restrained in handcuffs is not determinative, however, and Warden Smith testified that he did not place Appellee in handcuffs because he was cooperative. *See Sheppard*, 271 S.W.3d at 289. Appellee was not specifically told he was under arrest at that point and was not read his constitutional rights. He also was not told that the detention was only temporary. The game wardens did not use any force because Appellee cooperated in the investigation. Nevertheless, he was told that he had no choice but to accompany the officers to ETMC and was transported to the facility. We hold that under these facts, Appellee was under arrest at the moment he was told he was required to accompany the game wardens to the hospital and placed in the vehicle for transport. *Compare Delk v. State*, 855 S.W.2d 700, 711–12 (Tex. Crim. App. 1993) (holding that defendant was under arrest when he was involuntarily transported to police station during police investigation and was handcuffed and read his rights); *Moore v. State*, 55 S.W.3d 652, 659 (Tex. App.—San Antonio 2001, no pet.) (stating that transporting defendant from place of initial detention to the jail in order to conduct further investigation was an arrest); *Jones v. State*, 746 S.W.2d 281, 283 (Tex. App.—Houston [1st Dist.] 1988, pet. ref'd) (appellant placed under arrest by being restrained and driven around neighborhood involuntarily by police officer) *with Carter v. State*, 150 S.W.3d 230, 237 (Tex. App.—Texarkana 2004, no pet.) (holding trial court could have found defendant was not under arrest when officer "asked" suspect to get in the car and denied that he "told" suspect to get into the car, and defendant was not in handcuffs, read his rights, or otherwise restrained or told he was not free to leave or under arrest). Consequently, we disagree with the trial court's conclusion that Appellee was not under arrest until after the FSTs were conducted.

## 2. Existence of Probable Cause

Next, we determine whether the arrest was supported by probable cause. At the outset, we note that although we defer to the facts found by the trial court, we review de novo whether the evidence establishes that probable cause existed. *See Mosely*, 348 S.W.3d at 441 (citing *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005)). In *Mosely*, the court held that "the facts that [the defendant] was involved in an accident, smelled of alcohol, had bloodshot eyes, and admitted to drinking are certainly consistent with intoxication, [but] they do not establish that [the defendant] had lost the normal use of his faculties." *Id.* Consequently, the court concluded that the police did not have probable cause. *Id.* The court noted that the officers

did not perform field sobriety tests on the defendant, and one of the officers testified that he did not observe the defendant slurring his speech, having trouble maintaining his balance, or "anything else to suggest that he was physically or mentally impaired." *Id.* Appellee relies on *Mosely* to support his contention that the game wardens lacked probable cause to arrest him.

While the facts in *Mosely* and this case are similar, we disagree with the trial court's conclusion that the game wardens lacked probable cause to arrest Appellee. The game wardens' basis for probable cause consisted of the following facts: (1) Appellee admitted drinking four to five beers the day of the accident, (2) he admitted operating the jet ski at the time of the accident, (3) the game wardens observed Appellee exiting a boat near a garbage bag full of beer cans, (4) witnesses said the beer cans came from the boat on which Appellee was located, and (5) Appellee had bloodshot eyes and smelled of alcohol. The game wardens stated that none of the other people they interviewed at the scene smelled of alcohol. Appellee implicitly argues that we should disregard the beer can and blood evidence because it is not sufficiently connected to Appellee or the incident in question, and that without that evidence, the facts relating to probable cause are indistinguishable from those in *Mosely*. *See id.*

As we stated above, Texas courts have consistently held that probable cause to arrest exists where the defendant is involved in a collision and a law enforcement officer detects the strong odor of alcohol on his breath. *See Pesina,* 676 S.W.2d at 127 (recognizing that officer had probable cause to arrest defendant where the defendant was involved in a collision with another vehicle and had a strong odor of alcohol on his breath); *see also May,* 242 S.W.3d at 61 (reversing trial court's suppression order where evidence of intoxication included officer's observations that defendant had collided with another vehicle and "smelled of alcohol at the time of her accident"); *State v. Cullen,* 227 S.W.3d 278, 282 (Tex. App.—San Antonio 2007, pet. ref'd) (holding probable cause existed to arrest defendant for DWI where officers witnessed defendant crash his vehicle into a telephone pole after attempting to negotiate a turn at a high rate of speed and defendant smelled of alcohol at the time of his accident); *Knisley,* 81 S.W.3d at 483–84 (holding probable cause to arrest defendant for DWI where officer knew defendant was involved in a single vehicle accident, was unable to answer simple questions, and smelled of alcohol); *Broadnax v. State,* 995 S.W.2d 900, 904 (Tex. App.—Austin 1999, no pet.) (holding probable cause to arrest defendant for DWI where officer knew defendant crashed his vehicle trying to pass a truck and officer smelled alcohol on defendant's breath after the accident);

10

*Mitchell v. State*, 821 S.W.2d 420, 424–25 (Tex. App.—Austin 1991, pet. ref'd) (holding probable cause to arrest defendant for DWI where arresting officer learned from fellow officer that defendant had been involved in a serious single vehicle accident and smelled of alcohol). In light of the foregoing authority, we respectfully disagree with *Mosely* and decline to follow it. Therefore, even if we disregard the beer cans and the blood discovered in the boat, we hold that the trial court incorrectly concluded the game wardens lacked probable cause to arrest Appellee.

### 3. Compliance with Chapter 724

The trial court found that Warden Smith "incorrectly stated the law to Defendant Appellee when he was told he was required to provide a sample of his blood." Specifically, Warden Smith told Appellee that because he was involved in an accident, the law required that he provide a blood sample, implying that Warden Smith had no discretion in determining the type of specimen to be taken. *See* TEX. TRANSP. CODE ANN. § 724.014(b), (c) (providing that the officer has discretion to designate whether breath sample or blood specimen shall be taken). The game wardens freely admitted during the hearing that they did not comply with Chapter 724.[2] The State has not specifically challenged the trial court's finding on that issue. *See State v. Mercado*, 972 S.W.2d 75, 77 (Tex. Crim. App. 1998) (holding that when state is appellant, it must preserve complaints arising from order granting suppression as would any criminal defendant challenging denial of suppression motion). Consequently, even though the trial court's conclusions regarding arrest and probable cause were incorrect, the State has not shown that the trial court abused its discretion in granting Appellee's motion to suppress on this ground.

The State's first issue is overruled.

### EXIGENT CIRCUMSTANCES

In its second issue, the State contends that exigent circumstances existed warranting the taking of an involuntary blood sample.

### Applicable Law

The fact that alcohol dissipates quickly in the blood has been held to constitute exigent circumstances. *See Aliff*, 627 S.W.2d at 170 (holding that taking a blood sample from a person under arrest does not violate the constitution when officers have probable cause to arrest because

---

[2] It appears from the record that the game wardens were somewhat inexperienced in obtaining mandatory blood draws under Chapter 724.

11

alcohol dissipates from the blood stream at a rapid rate); *Laird*, 38 S.W.3d at 713. The United States Supreme Court recently held, however, that the fact that alcohol rapidly dissipates from the bloodstream does not create a per se exigent circumstance. *Missouri v. McNeely*, 133 S. Ct. 1552, 1562, 185 L. Ed. 2d 696 (2013). Instead, the dissipation of alcohol may be a factor, among others, in the exigency analysis under the larger totality of the circumstances test. *See id.* Specifically, the Court held that the trial court should conduct a "careful case-by-case assessment of exigency and . . . [that i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." *Id.* at 1561.

**Discussion**

As we have explained, law enforcement officers may constitutionally obtain a blood sample without a warrant or consent if they have probable cause, exigent circumstances, and a reasonable method of extraction. *See Schmerber v. California*, 384 U.S. at 770–71; *Aliff*, 627 S.W.2d at 169–70. We have concluded that the game wardens had probable cause to arrest Appellee. We also note that neither party contends that the method of extraction was unreasonable. The dispute revolves around the remaining factor, whether there were exigent circumstances. The State contends that the warrantless taking of the blood specimen was permissible because exigent circumstances existed at the time of the blood draw, namely, the fact that alcohol dissipates rapidly from the bloodstream.

The following evidence is the only evidence relevant to the exigency relied upon by the State—the natural dissipation of alcohol from the bloodstream.[3] Specifically, Warden Smith testified that "I didn't know if this guy was going to die, so I was doing all I could to get to the hospital to get a blood draw so if this guy did die, that was my evidence." Warden Thorne testified as follows:

> Q. Are you aware of situations in which you can get a blood draw from somebody without consent when they are not under arrest under exigent circumstances?
>
> A. Sir?

_____

[3] The State offered evidence explaining why the field sobriety tests were conducted at the hospital rather than at the scene. However, that evidence is not relevant to the exigencies in obtaining the blood sample, nor does the State argue that it is.

Q. Exigent circumstances, are you aware of exigent circumstances, a situation in which you can get a blood draw without the consent of somebody if they are not under arrest?

A. I'm aware that they exist, yes, sir, but I'm not really familiar with them.

Q. Okay. Are you aware that alcohol, once somebody stops drinking, rapidly leaves the bloodstream, correct?

A. Yes, sir.

Without any other evidence of exigent circumstances, such as evidence that it would take too long to procure a warrant under these circumstances, the trial court could have reasonably concluded that the State failed to show that the warrantless blood draw was supported by exigent circumstances. *See McNeely*, 133 S. Ct. at 1562.

The State's second issue is overruled.

<u>**CONSENT**</u>

In its third issue, the State argues that Appellee consented to the blood draw when he signed a medical form consenting to his blood being used for law enforcement purposes.

<u>**Standard of Review and Applicable Law**</u>

A driver's consent to a blood test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement. *Fienen v. State*, 390 S.W.3d 328, 332 (Tex. Crim. App. 2012) (citing *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011)).[4] The ultimate question is whether the person's "will has been overborne and his capacity for self-determination critically impaired" such that his consent to search must have been involuntary. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 2047, 36 L. Ed. 2d 854 (1973); *Meekins*, 340 S.W.3d at 459)). "The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence." *Id.* (citing *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011)). In determining whether the "defendant's will was overborne" when he gave consent, courts look at the circumstances leading up to the search, the reaction of the defendant to

---

[4] We note that Appellee relies on *Erdman v. State*, 861 S.W.2d 890 (Tex. Crim. App. 1993), a case that has been overruled by the court of criminal appeals. *See Fienen v. State*, 390 S.W.3d 328, 332, 334 (Tex. Crim. App. 2012).

13

pressure, and any other relevant factor. *Reasor v. State,* 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). Consent must be shown to be positive and unequivocal and is not established by "showing no more than acquiescence to a claim of lawful authority." *See Carmouche v. State,* 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

We review the trial court's consent finding for an abuse of discretion. *Dunn v. State,* 176 S.W.3d 880, 881 (Tex. App.—Fort Worth 2005, no pet.). Stated another way, we will uphold the trial court's finding that the specimen was taken involuntarily unless it is clearly erroneous. *Fienen,* 390 S.W.3d at 335.

**Discussion**

The evidence shows that Warden Smith presented Appellee with a form that he did not sign. However, the form was not admitted into evidence. Warden Smith testified that the form "basically informs [Appellee] . . . it's a mandatory blood draw." Warden Smith did not say whether Appellee signed the form. Warden Smith then told Appellee that he was required to provide a mandatory blood specimen at ETMC. Appellee requested that he be allowed to take a breath test, but Warden Smith informed him that the law required a blood sample. After Appellee arrived at ETMC, a nurse presented him with an ETMC-supplied form, which provided that "this form is to be completed when blood sample(s) are taken from a patient, at the request of the Law Enforcement Agency, for the purpose of testing the blood for alcohol content." Appellee signed the form. However, the trial court made the express finding that "the State did not prove by clear and convincing evidence that [Appellee] voluntarily consented to the taking of his blood."

Because he signed the form after Warden Smith told him that a blood specimen was mandatory and transported him to ETMC, the trial court could have reasonably concluded under the totality of the circumstances that Appellee acquiesced to a claim of lawful authority at the time he signed the form. Consequently, we cannot conclude that the trial court abused its discretion when it found that the State failed to prove by clear and convincing evidence that Appellee voluntarily gave his consent to provide a blood specimen. *See Carmouche,* 10 S.W.3d at 331.

The State's third issue is overruled.

14

## DISPOSITION

Having overruled the State's three issues, we *affirm* the trial court's order granting Appellee's motion to suppress evidence.

**BRIAN HOYLE**
Justice

Opinion delivered October 16, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

OCTOBER 16, 2013

NO. 12-12-00092-CR

**THE STATE OF TEXAS,**
Appellant
V.
**TERRY SHANNON BAKER,**
Appellee

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. A-18,245)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the trial court's order.

It is therefore ORDERED, ADJUDGED and DECREED that the order granting **TERRY SHANNON BAKER'S** motion to suppress evidence of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*