

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos. 07-13-00207-CR, 07-13-00208-CR

WHITNEY NICOLE CARTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

TONY DARELL JOHNSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 100th District Court
Carson County, Texas
Trial Court Nos. 5052, 5053; Honorable Stuart Messer, Presiding

April 27, 2015

OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellants Tony Darell Johnson and Whitney Nicole Carter were indicted for money laundering.[1] The cases were consolidated for trial and appellants were convicted by a jury. The trial court assessed punishment for each at two years'

---

[1] TEX. PENAL CODE ANN. § 34.02(a)(1) (West 2011).

confinement in a state jail facility. Johnson and Carter each present three issues, including a challenge of the trial court's order denying suppression of evidence found through a Department of Public Safety trooper's warrantless search of two cell phones. Finding the trial court abused its discretion by failing to suppress the challenged cell phone evidence, and the constitutional error was not harmless, we will reverse the judgments and remand the cases for further proceedings.

Background

At about 9:30 p.m. on October 24, 2011, Johnson was driving westbound in his mother's automobile on Interstate 40 in Carson County, Texas. Carter and Johnson were recently married and she was the only passenger. A DPS trooper observed Johnson commit traffic violations,[2] and conducted a traffic stop.

At the vehicle, the trooper detected an "overwhelming" odor of air freshener.[3] He saw multiple food and drink containers inside the vehicle along with containers of energy drink. During conversations with appellants, he noted the quietness of Carter's voice and her lack of eye contact, her apparent nervousness, Johnson's complaints of extreme fatigue from extended driving, the inaccuracy of the criminal history Johnson provided, and discrepancies in appellants' stories. Based on these facts, the trooper concluded reasonable suspicion existed to prolong the detention. After Johnson refused consent to search the vehicle, the trooper requested a canine unit.

---

[2] Johnson was driving in the left-hand lane while not passing and the vehicle had a defective license plate light.

[3] Photographs depicted an air freshener hanging from the rear-view mirror, two more hanging from the car's rear console, "multiple" fresheners in a rear door pocket and "more" fresheners in the rear floorboard.

2

Some thirty minutes later, the canine unit arrived and a drug dog conducted a free-air sniff around the vehicle. After the dog alerted to the vehicle the trooper searched the vehicle, and found six bundles of United States currency totaling $13,925. Five were located inside a bag within a soft-sided cooler on the rear seat of the vehicle and a sixth was found in Carter's purse. In a bag found in the passenger compartment, the trooper discovered a small amount of marijuana "shake" or residue. The trooper also found a vacuum sealer machine and bags in the trunk. He placed Johnson and Carter in handcuffs.

The trooper then transported appellants and their vehicle to the DPS precinct barn in Panhandle, Texas, where the search of the vehicle continued. The trooper summoned a DPS agent to handle the currency and investigate the money laundering offense. During the search, the trooper found two cell phones in the vehicle's passenger compartment. He then conducted a warrantless search of the data contained in the phones. Lacking equipment to download this information, he photographed about one hundred text messages and photographs he found on the phones.

Appellants were each indicted on the charge of money laundering. Each filed a pre-trial motion seeking suppression of the evidence seized. Following an evidentiary hearing, the trial court denied the motions by written orders.

At trial, over objections, the State offered photographs made by the trooper of text messages and photographs as well as a video recording discovered among the data contained in the cell phones.

Also over objection, the State offered the testimony of an officer with a North Carolina sheriff's department. He testified that in December 2011, some five weeks after their Carson County arrest, appellants were stopped for traffic violations and then arrested for possession of marijuana with intent to distribute. According to the officer, he found a small piece of a vacuum sealed bag containing marijuana in Carter's purse. While searching appellants' vehicle, he discovered a "lunch tote bag" containing "a large vacuum sealed bag containing marijuana." When the large bag was opened, the officer noticed it held six smaller vacuum sealed bags of marijuana. A North Carolina state trial court suppressed this evidence. At the time of appellants' trial in Carson County, the North Carolina order granting suppression of evidence remained on appeal.

During testimony at the guilt-innocence phase of trial, Carter explained the cash the trooper discovered was the proceeds from her settlement of a personal injury lawsuit and wedding gifts from family.

Johnson and Carter were found guilty of the charged offense and sentenced as noted. This appeal followed.

**Analysis**

**Johnson's Sufficiency Challenge**

By his third issue, Johnson argues the evidence was insufficient to sustain his conviction for the offense of money laundering.

In a sufficiency review, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing

4

*Jackson v. Virginia,* 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)); *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Rollerson v. State,* 227 S.W.3d 718, 724 (Tex. Crim. App. 2007). Our consideration of all the evidence includes any evidence that was improperly admitted. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Sufficiency of the evidence is measured by the elements of the offense as defined by the hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

Penal Code section 34.02(a)(1) provides that a person commits an offense if the person knowingly acquires or maintains an interest in, receives, conceals, possesses, transfers, or transports the proceeds of criminal activity. TEX. PENAL CODE ANN. § 34.02(a)(1) (West 2011). "Criminal activity" means any offense, including any preparatory offense, classified as a felony under the laws of Texas or the United States or punishable by confinement for more than one year under the laws of another state. TEX. PENAL CODE ANN. § 34.01(1) (West Supp. 2014).

Viewing all the evidence in the light most favorable to the verdict, the jury was authorized to believe appellants, whether on their honeymoon or not, were driving long distances in an effort to quickly cross the country from North Carolina to California. It

5

could also have disbelieved their explanation that the large amount of cash their vehicle contained was the proceeds of Carter's personal injury settlement and wedding gifts, particularly given the manner in which it was bundled and the couple's efforts to mask odors. Likewise the jury could have believed the substantial body of documentary and testimonial cell phone evidence showed appellants were engaged in marijuana trafficking. Buttressing this proof was evidence that mere weeks after the Carson County stop appellants were found in North Carolina in possession of vacuum-sealed bags of marijuana.

Johnson argues disposition of the present case should be guided by our decision in *Deschenes v. State,* 253 S.W.3d 374 (Tex. App.—Amarillo 2008, pet refused). According to Johnson, as in *Deschenes,* the evidence tending to establish a nexus between money and illegal drug activity amounts to mere conjecture. In *Deschenes,* during a consensual roadside search of the defendant's vehicle a trooper discovered over $17,000 cash in a bag in the vehicle's trunk. *Id.* at 377. A drug dog later alerted to the bag containing the money and an empty suitcase also in the trunk. *Id.* The defendant was convicted of money laundering. On appeal, the State argued its best single piece of evidence was the trooper's "expert" testimony that "[a] lot of the proceeds from the drugs that are shipped to the east come back westbound to either the originator who sent the drugs or someone that's going to purchase narcotics or weapons or whatever the contraband may be." *Id.* at 381. To establish a nexus between the money and criminal activity the State pointed to some twenty-two drug courier characteristics. *Id.* at 382-85. But this was insufficient to establish beyond a reasonable doubt a nexus between the money and criminal activity. *Id.* at 385. Unlike

6

*Deschenes,* the evidence here includes the substantial body of cell phone evidence pointing to appellants as trafficking in marijuana along with evidence gained from the North Carolina traffic stop showing knowledge and a common plan. *Deschenes* is thus to be distinguished from the present case, and does not control its disposition.

When all the evidence is viewed in the light most favorable to the verdict a rational trier of fact could have determined beyond a reasonable doubt that appellants knowingly concealed, possessed, transferred, or transported the proceeds of criminal activity; that is, from the sale of marijuana, and the value of the funds was $1,500 or more but less than $20,000. Johnson's third issue is overruled.

**Warrantless Search of Cell Phones**

Through their second and first issues respectively, Carter and Johnson challenge the trial court's failure to suppress evidence obtained by the trooper's warrantless search of the cell phones.

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion. *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). In so doing, we give "almost total deference to [the] trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor." *Fienen v. State,* 390 S.W.3d 328, 335 (Tex. Crim. App. 2012) (quoting *Guzman v. State,* 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We view the record evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *State v. Garcia-Cantu,* 253 S.W.3d 236, 241 (Tex. Crim. App. 2008) (party prevailing in trial court is afforded "strongest

legitimate view of the evidence and all reasonable inferences"). We review *de novo* questions of law and mixed questions of law and fact that do not depend on evaluation of credibility and demeanor. *Fienen,* 390 S.W.3d at 335 (citing *Montanez v. State,* 195 S.W.3d 101, 106 (Tex. Crim. App. 2006)). When, as here, no findings of fact were requested nor filed, we review the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact supported by the record. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

In the trial court and on appeal, the State contends the trooper properly reviewed the data on the cell phones as a search incident to appellants' lawful arrest. *See Chimel v. California,* 395 U.S. 752, 763, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969) (explaining when an arrest is made "[t]here is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence"); *United States v. Finley,* 477 F.3d 250, 259-60 (5th Cir. 2007) (citing *United States v. Robinson,* 414 U.S. 218, 235, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973)). A search incident to arrest is authorized because officers need to seize weapons and dangerous objects which might be used to assault an officer and to prevent the loss or destruction of evidence. *State v. Granville,* 423 S.W.3d 399, 410 (Tex. Crim. App. 2014) (citing *Robinson,* 414 U.S. at 224-26).[4]

---

[4] Although it is not the basis for our disposition of the appeal, the record leaves significant doubt whether search of appellants' cell phones is properly considered incident to their arrest. As noted, the phones were discovered and searched after appellants and their vehicle were taken to the DPS barn, and while appellants were securely in custody. It is undisputed appellants were handcuffed beside the road after the cash was found in their vehicle, and Johnson was given *Miranda* warnings. It also is undisputed that at the time Johnson was handcuffed, the trooper told Johnson, in

8

In its opinion in *Riley v. California*, however, issued after trial and briefing in these cases, the United States Supreme Court determined that the search incident to arrest exception to the warrant requirement does not extend to a search of data on a lawfully seized cell phone. *Riley v. California,* 134 S. Ct. 2473, 2485, 2493, 189 L. Ed. 2d 430 (2014) ("a warrant is generally required before such a search, even when a cell phone is seized incident to arrest").[5]

_____

Carter's presence, that he was under arrest at that time, for money laundering. The trooper's written report states "[b]oth subjects were placed under arrest" at the roadside. The trooper's trial testimony is consistent with his report, that appellants were arrested at the roadside stop before the cell phones were found and searched. There was testimony from officers at the motion to suppress hearing to the effect that appellants were arrested after their cell phones were searched. "A search is incident to arrest only if it is 'substantially contemporaneous' with the arrest and is confined to the area within the immediate control of the arrestee." *Granville,* 423 S.W.3d at 410 (citing *Vale v. Louisiana,* 399 U.S. 30, 33, 90 S. Ct. 1969, 26 L. Ed. 2d 409 (1970)). This means generally a search incident to arrest is not justifiable if the "'search is remote in time or place from the arrest' . . . or no exigency exists." *Id.* (citing *United States v. Chadwick,* 433 U.S. 1, 15, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977)). Despite the hearing testimony, we think the undisputed evidence might well establish that appellants, as a matter of law, were subjected to a custodial arrest when they were handcuffed on the roadside and transported to the DPS barn, well before their phones were searched. *See*, *e.g.*, *Lewis v. State,* 412 S.W.3d 794, 800 (Tex. App.—Amarillo 2013, no pet.) (citing *Moore v. State,* 55 S.W.3d 652, 656 (Tex. App.—San Antonio 2001, no pet.)) (discussing factors to determine whether detention has evolved into custodial arrest). We assume, however, for purposes of this opinion that appellants were arrested at the DPS barn.

[5] Because *Riley* was decided while this case was pending on direct appeal, it governs our disposition of the constitutional issue. *Davis v. United States*, 131 S. Ct. 2419, 2426, 180 L. Ed. 2d 285 (2011) (newly announced rules of constitutional criminal procedure must apply retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception) (internal quotations omitted); *United States v. Spears* 31 F. Supp. 3d 869 (N.D. Tex. 2014); *Bowman v. State*, No. 05-13-01741-CR, No. 05-13-01742-CR, No. 05-13-01743-CR, 2015 Tex. App. LEXIS 1196 (Tex. App.—Dallas Feb. 5, 2015, n.p.h.) (mem. op., not designated for publication) (both holding *Riley* applies retroactively).

It remains true that the exigencies of a situation may justify a warrantless search of a particular cell phone. *Id.* at 2494. For example, "the need to prevent the imminent destruction of evidence in individual cases, to pursue a fleeing suspect, and to assist persons who are seriously injured or are threatened with imminent injury" might, in a specific situation, authorize the warrantless search of a cell phone. *Id.* (quoting *Chadwick,* 433 U.S. at 15, n.9) ("if officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without opening the luggage"). However, "unlike the search incident to arrest exception, the exigent circumstances exception requires a court to examine whether an emergency justified a warrantless search in each particular case." *Id.*

The DPS agent testified to the risk that a cell phone could be wiped clean of data by remote action.[6] The Court in *Riley* addressed the risk of "remote wiping" and the similar risk of data encryption. *Riley,* 134 S. Ct. at 2486. It noted the Court had "been given little reason to believe that either problem is prevalent." *Id.* And the Court addressed means by which such risks can be minimized by law enforcement officers. *Id.* at 2487. Finally, the Court said that "[t]o the extent that law enforcement still has specific concerns about the potential loss of evidence in a particular case, there remain more targeted ways to address those concerns." *Id.* The Court noted that in a truly "'now or never' situation, -- for example, circumstances suggesting that a defendant's phone will be the target of an imminent remote-wipe attempt," the exigent circumstance

---

[6] He told the court, "In our technological world, cell phones can be remotely accessed and basically, what we say, wiped. They can be cleaned of all their memory. Anything that was on them can be erased off of them. So it's pertinent that you check them at the time of arrest."

exception may permit a warrantless search, or measures to prevent the phone from locking. *Id.* at 2487-88 (citing *Missouri v. McNeely,* 133 S. Ct. 1552, 185 L. Ed. 2d 696 (2013) and *Illinois v. McArthur,* 531 U. S. 326, 121 S. Ct. 946, 148 L. Ed. 2d 838 (2001)).

In the trial court the State argued search of appellants' cell phone was justified on typical incident-to-arrest grounds, officer safety and preservation of evidence. The agent's testimony related to the risk of remote wiping did not suggest that troopers on this occasion were presented with a truly "now or never" situation, and the State does not argue on appeal that the search was justified by exigent circumstances. We agree the record does not contain evidence of the type of truly exigent circumstances the Court recognized in *Riley.*

We conclude, based on *Riley,* that appellants are correct the search of their phones cannot be justified as a search incident to their arrest and, being conducted without exigency or warrant, violated appellants' Fourth Amendment rights.

The State relies heavily on the Fifth Circuit's opinion in *Finley,* 477 F.3d at 259-60, in which the court, prior to *Riley,* upheld search of a cell phone incident to arrest. And, although the parties do not address the subject of good-faith reliance in their briefing, we have considered the possibility[7] that, before the issuance of the *Riley* opinion, law enforcement might have relied in good faith on case law like *Finley.* We need not dwell on the possibility in this case, however, because appellants' motions to suppress asserted the troopers' conduct "violated" Article 38.23 of the Texas Code of

---

[7] *See McClintock v. State,* 444 S.W.3d 15, 20-21 (Tex. Crim. App. 2014) (remanding appeal to court of appeals for consideration of good-faith exception to exclusionary rule, even though issue was not briefed on direct appeal).

Criminal Procedure as well as the Fourth Amendment.  Article 38.23(a) provides in part, "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."  TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2005).  The only good faith exception to the function of this rule is when an officer "acting in objective good faith" relies on a warrant issued by a magistrate based on probable cause.  TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (West 2005).  Of course here a warrant was not involved.  Because Article 38.23 permits no exception for good-faith reliance on case law, exclusion of the evidence acquired from appellants' cell phones was required under Texas law in any event.  *See Douds v. State,* 434 S.W.3d 842, 861 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (citing *Wehrenberg v. State*, 416 S.W.3d 458, 473 (Tex. Crim. App. 2013)); *State v. Jackson,* 435 S.W.3d 819, 831 (Tex. App.—Eastland 2014, pet. granted) ("an officer's good faith reliance on the law or existing precedent is not recognized as an exception to the Texas exclusionary rule").

**Harmless Error Review**

*Admission of like evidence without objection*

The State argues that should we find the trial court abused its discretion by failing to suppress the challenged evidence, any error was harmless because the breadth of appellants' motions did not reach opinion testimony based on data drawn from the cell phones, and appellants failed to specifically object to such opinion testimony at trial.

According to the State, certain testimony was outside the scope of appellants' motions and "contains a summary and a conclusion about the same evidence of which [appellants are] complaining." The State cites the trooper's testimony that the text messages "appeared to be text messages about narcotics transactions," and his testimony that photographs found on the cell phones "were photographs of basically road signs, and photographs of marijuana." The State also refers to the DPS agent's opinion testimony that, based on his review of the text messages and photographs, appellants' line of work was dealing in marijuana.

> In relevant part, appellants' motions to suppress provided:
>
> The products of the illegal searches and seizures are the "fruit of a poisonous tree" and as evidence must be suppressed. Such fruits include but are not limited to: The taking of two (2) cell phones that stored information or otherwise were used in the distribution of computerized text file; also, the contents of or access to e-mails, passwords, notes, logs, calendars, photos, call logs, contact lists, texts, or any and all other information gained, gleaned, or learned from either of the phones or both the phones. . . .
>
> Therefore, Defendant requests that the following matters be suppressed at trial of this cause:
>
> All wire, oral, or electronic communications intercepted in connection with this case and any and all evidence derived from said communications.

At trial, the State developed a substantial body of evidence concerning data contained in the two cell phones through the testimony of the trooper and the agent. Documentary evidence admitted on the State's offer included sixty-four $8^{1}/_{2}$-by-11 color photographs of text messages and photographs the trooper found on the two phones. In the reporter's record, twenty pages of the agent's testimony concerned his interpretation of the meaning of text messages and identification of cell phone

13

photographs. The agent testified "upwards of 80" text messages and "20 to 30" photographs dealing with narcotics transactions were found on the two phones.

A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State,* 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). But "it is settled that when a pre-trial motion to suppress evidence is overruled, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error." *Fuller v. State,* 827 S.W.2d 919, 930 (Tex. Crim. App. 1992). "[A] complaint is not preserved for appeal unless it was made to the trial court 'by a timely request, objection or motion' that 'stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context.'" *Resendez v. State,* 306 S.W.3d 308, 312 (Tex. Crim. App. 2009) (quoting TEX. R. APP. P. 33.1(a)(1)(A)); *see* TEX. R. EVID. 103(a)(1). To determine whether error was sufficiently preserved, we consider the context of the complaint. *Resendez,* 306 S.W.3d at 313. This means we look to the motion to suppress and the record of the suppression hearing to determine whether the complaint was apparent from the context. *See id.* at 314-16.

The State apparently does not disagree that the bulk of testimonial and documentary evidence concerning data discovered on the cell phones was sufficiently challenged through appellants' motions and their hearing and that further objection at trial was not required for preservation of the complaint. Yet it draws a distinction

14

between the quoted opinions and other opinions State witnesses gave based on the cell phone data.  We see no basis, or authority, for such a distinction.

After review of the motion and the record of the court's hearing, we find that the trial court was sufficiently notified that appellants challenged all evidence discovered by the trooper in his search of the two phones.  This included all, and not just most, of the opinions of the trooper and the agent based on their consideration of the data.

*Constitutional Error under Appellate Rule 44.2(a)*

We apply the harmless error standard of appellate rule 44.2(a) to assess the harm resulting from a trial court's erroneous denial of a motion to suppress and subsequent admission of evidence obtained in violation of the Fourth Amendment.  TEX. R. APP. P. 44.2(a); *Snowden v. State,* 353 S.W.3d 815, 817-18, 822 (Tex. Crim. App. 2011); *Thompson v. State,* No. 01-12-00271-CR, 2013 Tex. App. LEXIS 12326, at *8-9 (Tex. App.—Houston [1st Dist.] Oct. 3, 2013, pet. refused) (mem. op., not designated for publication).  We consider four non-exclusive factors: (1) the nature of the error, (2) the degree of its emphasis by the State, (3) the probable implications of the error, and (4) the weight it was likely assigned by the jury during deliberations.  *Snowden,* 353 S.W.3d at 822.  "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [a particular] error did not contribute to the conviction or punishment.'"  *Id.* (quoting TEX. R. APP. P. 44.2(a)).

According to Johnson and Carter, at the time of the Carson County traffic stop they were on their honeymoon. Beginning with voir dire the prosecutor presented a theme built on appellants' honeymoon. He asked panel members what items they would likely take on a "dream honeymoon." He gave them choices of a passport, swimsuit, work cell phone, and a camera. None of the panel members chose their work cell phone. During opening statement, the prosecutor told the jury the cell phones were appellants' work phones because they were on a business venture, traveling to California to buy more marijuana.

Of the ninety-three State's exhibits admitted at trial, sixty-four were the $8^{1}/_{2}$-by-11 color photographs of text messages and photographs from the phones. Another State's exhibit was a video recording of marijuana taken from one of the phones. Twenty pages of the reporter's record concerned the agent's interpretation of text messages and identification of cell phone photographs. The trooper testified in an illegal drug or money laundering investigation it is "fairly common to find evidence of criminal activity on the cell phones, either in text messages or in pictures." Frequently, he added, "there's pictures of the actual narcotics prior to the stop." In short, the record demonstrates the products of the trooper's warrantless search assumed a major evidentiary place in the State's trial proof.

The prosecutor continued the honeymoon theme in closing argument. He classified appellants' possession of the cell phones on their honeymoon as "the most important part about this case." He argued a person takes a work cell phone on a honeymoon if it's a business venture. And, pointing to the text messages and

photographs, he argued appellants had their cell phones with them because appellants were traffickers.

Aside from the cell phone evidence, overwhelming evidence of appellants' guilt is not shown by this record. The cell phone evidence was significant in quantity and substance. Its admission undergirded the State's argument that appellants were on a business trip and their business was making money from trafficking. It constituted a large quantity of tangible proof of suspicious conduct, conduct lacking any legitimate excuse or explanation. And it was substantially supportive of a jury finding that when the trooper stopped appellants, they knowingly possessed or were transporting proceeds from the illegal sale of marijuana.

On this record it is not possible for us to say beyond a reasonable doubt that the cell phone evidence did not contribute to appellants' convictions. We sustain Carter's second issue and Johnson's first issue.

Johnson presented one rendition issue which we have overruled. Carter presented none. Therefore, our review of appellants' remaining issues is unnecessary to the final disposition of this appeal. TEX. R. APP. P. 47.1.

Conclusion

Having sustained Carter's second issue and Johnson's first issue, we reverse the trial court's judgments of conviction and remand the cases to that court for proceedings consistent with this opinion.

James T. Campbell
Justice

Publish.

17