**Opinion issued August 29, 2019**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

## NO. 01-18-00146-CR

————————————————

**THE STATE OF TEXAS, Appellant**

**V.**

**SEAN MICHAEL MCGUIRE, Appellee**

On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case No. 10-DCR-055898

## DISSENTING OPINION

I respectfully dissent. I would hold that the trial court abused its discretion in granting Sean McGuire's motion to suppress the evidence obtained as a result of his warrantless arrest, effectively declaring his arrest illegal.

Based solely on review of the cold reporter's record from an evidentiary suppression hearing held two years earlier, the trial court, on remand, reached the opposite conclusion of the original trial judge who had presided over the hearing. The trial court selectively cited facts from that record, disregarding important contradictory facts, to draw the incorrect legal conclusions that the officers lacked probable cause and that the suspicious place exception to the warrant requirement did not apply. And the majority opinion affirms by incorrectly presuming that the United States Supreme Court's holding in *Missouri v. McNeely* extends beyond warrantless searches to draw blood into the distinct domain of warrantless arrests. *See* 569 U.S. 141, 145 (2013). In so doing, it ignores this Court's own binding precedent holding that the need to preserve evidence constitutes an exigent circumstance under the suspicious place exception to the warrant requirement.

### Suspicious Place Exception to Warrant Requirement

Warrantless arrests are authorized only in limited circumstances outlined primarily in Chapter 14 of the Texas Code of Criminal Procedure. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005). Here, the State relies on the "suspicious place" exception, codified in article 14.03(a)(1), authorizing the warrantless arrest of an individual found in a suspicious place under circumstances

reasonably showing he committed a felony or a breach of the peace. *See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1).[1]

The Court of Criminal Appeals has held that "the test under [a]rticle 14.03(a)(1) is a totality of the circumstances test. First, probable cause that the defendant committed a crime must be found and second, the defendant must be found in a 'suspicious place.'" *Dyar v. State*, 125 S.W.3d 460, 468 (Tex. Crim. App. 2003); *Lewis v. State*, 412 S.W.3d 794, 801 (Tex. App.—Amarillo 2013, no pet.). I would hold that the State met this test and established that McGuire's arrest was justifiable under the suspicious place exception to the warrant requirement.

## A.    Probable Cause

Probable cause for a warrantless arrest exists when the arresting officer possesses reasonably trustworthy information sufficient to warrant a reasonable belief that an offense has been or is being committed. *See Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009).

---

[1]    McGuire was originally charged with the felony of intoxication manslaughter. *See* TEX. PENAL CODE ANN. § 49.08(b) (stating that offense of intoxication manslaughter is second-degree felony). He was later charged with felony murder, *see id.* § 19.02(b)(3), and failure to stop and render aid, *see* TEX. TRANSP. CODE ANN. § 550.021 (stating that failure to stop and render aid is felony offense). In a previous opinion, this Court affirmed his conviction for failure to stop and render aid, vacated his conviction for felony murder because of the admission of an illegal blood draw, and remanded for further proceedings. *See McGuire v. State*, 493 S.W.3d 177, 199, 208 (Tex. App.—Houston [1st Dist.] 2016, pet. ref'd), *cert. denied*, 137 S. Ct. 2188 (2017).

The record establishes the following:

At approximately 12:45 a.m. on August 2, 2010, Trooper Tomlin reported to the scene of a fatality crash, which he was told by dispatch involved a motorcycle that had been hit and dragged 800 feet, "from Brazos Town Center to the intersection of 2977."

Around the same time, McGuire called his mother and two police acquaintances, who in turn called law enforcement to report that McGuire had hit something in the road and was waiting at a nearby Shell station for law enforcement to arrive.

At the scene of the accident, Trooper Tomlin saw the complainant's body on the side of the road. Tomlin was then informed that the driver of the vehicle that had hit the complainant's motorcycle was across the highway at a Shell gas station.

Trooper Tomlin was the first to arrive at the Shell station, at approximately 12:50. Minutes later, Trooper Wiles, who had heard over the police radio that there had been a fatal accident and that the suspected driver was at the Shell station, joined him there, where the two troopers encountered McGuire.

McGuire stated that he had been driving his truck, that he had hit something, and that his wife, who was in the truck with him, told him that he had hit a person.

Trooper Wiles observed that McGuire's truck had "a piece of metal stuck inside the grille with some motor oil on it" that "appeared to be the rear fender of the motorcycle," but he "didn't seem to know where it came from."

Due to "[a] strong order of alcoholic beverage that [Trooper Wiles] smelled [on McGuire's] person and breath," his bloodshot, glassy eyes, and the "slight dazed look on his face," Wiles believed McGuire was intoxicated. Wiles asked McGuire if he was willing to perform a field sobriety test, and McGuire refused.

Trooper Wiles then drove McGuire to the scene of the accident. Wiles testified, and video of the crime scene showed, that when McGuire saw the motorcycle, "he covered his face and started supposedly crying and said that he was sorry."

I would hold that this information was sufficient to warrant a reasonable belief that McGuire had committed a crime.[2] *See, e.g.*, *Dyar*, 125 S.W.3d at 468 (holding arresting officer had probable cause to believe appellant had committed DWI; officer found appellant at hospital after having been informed that driver in one-car accident was taken to hospital, appellant had slurred speech, red glassy eyes, and strong smell of alcohol, and appellant admitted to drinking and driving); *Lewis*, 412 S.W.3d at 801–02 (holding arresting officer had probable cause to believe appellant had committed DWI based in part on appellant's flight from scene of accident, officer's

---

[2]     The majority opinion does not address probable cause.

detection of odor of alcohol emanating from appellant, appellant's highly emotional state, and appellant's admission that she "had too much to drink"); *see also Coronado v. State*, No. 01-99-00912-CR, 2000 WL 730682, at \*2–3 (Tex. App.—Houston [1st Dist.] June 8, 2000, pet. ref'd) (not designated for publication) (holding officer had probable cause to arrest appellant after he received information from other officers that appellant was driver of one of vehicles in fatality accident and officer noticed appellant had strong odor of alcohol, slurred speech, and glassy eyes).

## B.    Suspicious Place

I would further hold that the State proved that the Shell station where Troopers Tomlin and Wiles first encountered McGuire was a suspicious place and that the trial court erred in reaching the opposite conclusion because that conclusion was not supported by the facts and it failed to consider the totality of the circumstances.

Relevant to the question whether McGuire was found at a suspicious place, the trial court found that Troopers Tomlin and Wiles testified that there was nothing suspicious about the location where they encountered McGuire and that McGuire was not acting in a suspicious manner. These findings are wholly inadequate to support the legal conclusion that the Shell station was not a suspicious place under the circumstances known to the troopers at that time. *Cf. Villalobos v. State*, No. 14-16-00593-CR, 2018 WL 2307740, at \*6 (Tex. App.—Houston [14th Dist.] May 22, 2018, pet. ref'd) (not designated for publication) (rejecting argument that warrantless

6

arrest was illegal because officer testified that it was not suspicious for defendant to stay near his damaged vehicle after accident). It appears the trial court took the troopers' testimony as a legal conclusion, and in so doing, did not follow the well-established law that the suspicious-place inquiry requires more than evaluating whether a particular place, on its own and without context, is suspicious.

"Few places, if any, are inherently suspicious. The determination of whether a place is suspicious requires a highly fact-specific analysis." *Lewis*, 412 S.W.3d at 802. As the Court of Criminal Appeals has explained, under article 14.03(a)(1),

> Any place may become suspicious when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual committed a crime and exigent circumstances call for immediate action or detention by the police.

*Swain*, 181 S.W.3d at 366 (citations omitted).

Here, the trial court did not make any fact-specific findings beyond the officers' testimony that the Shell station, in and of itself, was not a suspicious place and that McGuire was not acting suspiciously when they encountered him there. In concluding that "[t]here is no evidence that the place where [McGuire] was arrested was a suspicious place pursuant to Texas Code of Criminal Procedure Article 14.03(a)(1)," the trial court made no findings with respect to "the accompanying circumstances," which here clearly raised a reasonable belief that McGuire had committed a crime. *Id.*

In determining whether to characterize a place as suspicious, the Court of Criminal Appeals has stated that the "only . . . factor [that] seems to be constant throughout the case law" is that "[t]he time frame between the crime and the apprehension of a suspect in a suspicious place is short." *Dyar*, 125 S.W.3d at 468. Here, McGuire was found at the Shell station only minutes after the crash occurred. But this fact pales in significance in comparison to other circumstances that surrounded McGuire's presence at the Shell station, including the facts that he called police acquaintances to report that he had hit something in the road just across from the Shell station, where he then waited for law enforcement to arrive; upon his arrival at the scene of the accident, Trooper Tomlin observed the complainant's dead body on the side of the road; at the Shell station, Trooper Wiles observed "a piece of metal stuck inside the grille [of McGuire's truck] with some motor oil on it" that "appeared to be the rear fender of the motorcycle"; and McGuire, who showed signs of intoxication, stated to the troopers that he believed he had hit something and that his wife told him it was a person.

On this record, I would hold that the trial court erred in concluding that the Shell station was not a suspicious place under article 14.03(a)(1). *See, e.g.*, *Villalobos*, 2018 WL 2307740, at *6 ("[T]he area where appellant was found was a suspicious place because the police reasonably could have believed, based on the surrounding circumstances [including facts that appellant was found shortly after

8

accident having fled scene, his vehicle was missing wheel that matched model of wheel and other debris found at accident site, he displayed signs of intoxication, and he admitted he had been involved in accident after leaving bar], that appellant drove while intoxicated and was involved in a recent accident nearby and needed to be detained because he had fled the scene of that accident."); *Polly v. State*, 533 S.W.3d 439, 443 (Tex. App.—San Antonio 2016, no pet.) (holding scene of hit-and-run accident was suspicious place where one hour after accident appellant returned to scene and officer could have reasonably believed appellant committed offense of driving while intoxicated).

Turning to the focus of the majority opinion—exigent circumstances—I do not agree that a strict showing of exigency is always necessary, particularly in hit-and-run cases, where the suspect has shown his willingness to flee with evidence of not only his intoxication but also of the crash (such as the bumper of the complainant's motorcycle embedded in the grille of McGuire's truck). *Cf. Cribley v. State*, No. 04-04-00047-CR, 2005 WL 1812585, at *2 (Tex. App.—San Antonio Aug. 3, 2005, no pet.) (mem. op., not designated for publication) (holding, without mention of exigency, that appellant's home where she went shortly after fleeing scene of accident was suspicious place).

The statutory language of article 14.03(a)(1) does not mention exigency. It states only that a warrant is not necessary to arrest

9

> persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws[.]

*See* TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1).

Nevertheless, some courts have implied an exigency requirement from a sentence in the Court of Criminal Appeals' opinion in *Swain*: "Any 'place' may become suspicious when a person at that location and the accompanying circumstances raise a reasonable belief that the person has committed a crime and exigent circumstances call for immediate action or detention by police." *See* 181 S.W.3d at 366. I do not read this to require exigent circumstances in all cases under article 14.03(a)(1). While exigency does ordinarily play a prominent role in the analysis, it is but one of innumerable circumstances that may present for consideration in assessing the totality of the circumstances.

Notably, many post-*Swain* cases have addressed the suspicious place exception without ever mentioning exigency, including at least two from this Court. *See, e.g.*, *Rodriguez-Rubio v. State*, No. 01-17-00463-CR, 2018 WL 6061306, at *4 (Tex. App.—Houston [1st Dist.] Nov. 20, 2018, no pet.) (mem. op., not designated for publication) ("Although an apartment complex is not an inherently suspicious place, the fact that the GPS locator in the stolen cell phone showed that the phone and appellant, who matched the witnesses' description, were in the same location,

10

rendered this apartment complex a 'suspicious place.' The 'pinging' of the stolen cell phone at the apartment complex tied appellant to the crime scene."); *Contreras v. State*, No. 01-08-00424-CR, 2009 WL 2461483, at *3 (Tex. App.—Houston [1st Dist.] Aug. 13, 2009, pet. ref'd) (mem. op., not designated for publication) (holding that appellant, who was found at scene of crime searching for something under bushes and cars, was found in suspicious place where police were aware that robbery and shooting suspects had lost firearm in course of committing crime).[3]

---

[3]  *See also, e.g.*, *Gonzalez v. State*, No. 08-14-00175-CR, 2017 WL 2464690, at *6 (Tex. App.—El Paso June 7, 2017, no pet.) (not designated for publication) (holding that appellant's location near ditch where his truck had landed tail-up after accident was suspicious place where appellant showed signs of intoxication); *Griffin v. State*, No. 03-15-00398-CR, 2017 WL 2229869, at *6 (Tex. App.—Austin May 19, 2017, pet. ref'd) (mem. op., not designated for publication) (stating that warrantless arrest for assault of public servant was justified under suspicious place exception based on: (1) short distance between scene of assault and appellant's residence; (2) short amount of time between report of assault and appellant's apprehension at his residence; (3) appellant's signs of intoxication, refusal to cooperate, and belligerent behavior; (4) complainant's statements to officers describing assault and identifying appellant as assailant; and (5) physical evidence tending to corroborate complainant's account); *Patel v. State*, No. 08-13-00311-CR, 2015 WL 6437413, at *5 (Tex. App.—El Paso Oct. 23, 2015, no pet.) (not designated for publication) (holding that, under totality of circumstances, location where appellant, who showed signs of intoxication, was found near single-car accident in which his vehicle left road, traveled thirty yards down embankment, and landed in ditch was suspicious place); *Gary v. State*, No. 13-12-00266-CR, 2013 WL 485793, at *4 (Tex. App.—Corpus Christi–Edinburg Feb. 7, 2013, pet. ref'd) (mem. op., not designated for publication) (holding that appellant's car in parking lot of pub was suspicious place where officer observed him repeatedly come and go from his car over short period of time because regular patron would have no reason to do so); *Owen v. State*, No. 13-10-00417-CR, 2011 WL 5515548, at *5 (Tex. App.—Corpus Christi–Edinburg Nov. 10, 2011, pet. ref'd) (mem. op., not designated for publication) (holding that truck was suspicious place because it was parked in otherwise-vacant high school stadium parking lot in middle of night in January in close proximity to scene of

In this connection, I disagree with the majority's conclusion that the State forfeited its argument that the circumstances in this case were exigent. The State asserted in the trial court and on appeal that McGuire's warrantless arrest was justified under article 14.03(a)(1), which, again, makes no mention of an exigency requirement in providing that a peace officer may make a warrantless arrest of a person found in a suspicious place. At no stage of this case did McGuire argue that the State failed to prove exigent circumstances—indeed the phrase does not appear in his motion to suppress or in the transcript of the hearing on that motion, nor did he raise the issue on appeal.[4] Further, the State acknowledges that exigent circumstances may figure into the 14.03(a)(1) equation, and correctly notes that courts "sometimes use the term 'exigent circumstances' and sometimes not," and

burglary, man meeting appellant's description had recently committed separate burglary, and officer apprehended appellant thirty minutes after being dispatched to scene); *Perez v. State*, No. 10-09-00022-CR, 2010 WL 3342009, at *2–3 (Tex. App.—Waco Aug. 25, 2010, no pet.) (mem. op., not designated for publication) (holding that residence where appellant, who admitted to police he had been drinking and was involved in traffic accident, was found asleep was suspicious place); *State v. Drewy*, No. 03-08-00169-CR, 2008 WL 4682441, at *4 (Tex. App.—Austin Oct. 23, 2008, no pet.) (mem. op., not designated for publication) (holding that appellant, who showed signs of intoxication and was combative, was in suspicious place as he stood near his disabled vehicle); *Hollis v. State*, 219 S.W.3d 446, 460 (Tex. App.—Austin 2007, no pet.) (holding that dance hall where appellant was found was suspicious place because it emanated strong odor of ether characteristic of "meth lab," was located in secluded area, and had no legitimate commercial or residential purposes).

[4] McGuire did not argue that the State was required to establish exigent circumstances to justify his warrantless arrest under the suspicious place exception until this Court requested supplemental briefing on the subject.

that warrantless arrests under article 14.03(a)(1) "on very similar facts to the facts in this case have been routinely upheld by courts all over Texas."

In my opinion, it would be a gross distortion of the Rules of Appellate Procedure to affirm the trial court's suppression of evidence obtained from a warrantless arrest that the record shows to have been justified under article 14.03(a)(1), for the State's purported failure to preserve argument in the trial court on, or to adequately address on appeal, a so-called element of the statute that is absent from its express terms, and that McGuire never brought to the trial court's attention. *See State v. Allen*, 53 S.W.3d 731, 733 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (concluding theories not presented to trial court are not "applicable to the case" and thus do not fall under traditional rule that reviewing court should affirm if trial court's decision is correct on any theory of law applicable to case); *cf. Douds v. State*, 472 S.W.3d 670, 674 (Tex. Crim. App. 2015) (concluding, under Texas Rule of Appellate Procedure 33.1(a), that appellant failed to preserve complaints because "isolated statements globally asserting that a blood draw was conducted without a warrant" were not "enough to apprise the trial court that it must consider whether there were exigent circumstances to permit the warrantless search").

Assuming, nevertheless, that there is an exigency requirement built into the suspicious place exception to justify a warrantless arrest and that the requirement applies in this case, I would hold, under Court of Criminal Appeals precedent, that

the need to preserve evidence of McGuire's blood alcohol level constituted exigent circumstances, as did the more general need to preserve evidence of the crash. *See Gallups v. State*, 151 S.W.3d 196, 202 (Tex. Crim. App. 2004) (holding appellant's warrantless arrest for DWI met exigency requirement of suspicious place exception because "the circumstances surrounding appellant's warrantless home arrest raised a reasonable belief that appellant had committed a breach of the peace and that exigent circumstances (the need to ascertain appellant's blood-alcohol level) existed to justify appellant's immediate arrest"); *see also, e.g.*, *Banda v. State*, 317 S.W.3d 903, 912 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding that exigency requirement for warrantless arrest under suspicious place exception was met where police could reasonably believe it was necessary to take prompt action to ascertain appellant's blood-alcohol level); *see also State v. Wrenn*, No. 05-08-01114-CR, 2009 WL 1942183, at *3 (Tex. App.—Dallas July 8, 2009, no pet.) (mem. op., not designated for publication) (holding that necessity of preserving evidence of DWI suspect's blood alcohol level constitutes exigency (citing *Gallups*, 151 S.W.3d at 202)).

In holding that the need to preserve evidence of McGuire's blood alcohol level did not constitute exigent circumstances, the majority relies on the United States Supreme Court's opinion in *McNeely*. *McNeely* held that the natural metabolization of alcohol in the bloodstream does not present an exigency justifying a warrantless

blood draw when there is time—as there was here—to obtain a search warrant. *See* 569 U.S. at 145, 152. In relying on *McNeely*, the majority overlooks an important distinction: *McNeely* addressed the exigency required for a warrantless *blood draw*, not a warrantless *arrest*. The only authority the majority cites to support its expansion of *McNeely* into new territory is the unpublished case *State v. Donohoo*, in which the San Antonio Court of Appeals assumed without discussion that *McNeely*'s holding regarding warrantless blood draws extends to warrantless arrests. *See* No. 04-15-00291-CR, 2016 WL 3442258, at *6 (Tex. App.—San Antonio June 22, 2016, no pet.).

As noted in the majority opinion, other courts of appeals have reached the opposite conclusion in published cases, holding, in keeping with *Gallups* and subsequent Texas cases, that the exigency requirement for a warrantless arrest under the suspicious place exception is met by the need to preserve evidence of a suspect's blood alcohol level. *See Dansby v. State*, 530 S.W.3d 213, 222 (Tex. App.—Tyler 2017, pet. ref'd) (holding that "exigent circumstances—the need to ascertain Appellant's alcohol concentration—existed to justify Appellant's immediate arrest" under article 14.03(a)(1)); *Lewis*, 412 S.W.3d at 802 (holding that officer's need "to take prompt action to ascertain appellant's blood-alcohol level" satisfied exigency requirement for warrantless arrest under Article 14.03(a)(1)).

15

Minimizing the holdings in these cases, the majority points out that they do not mention *McNeely*. I reply that there is good reason for the omission—*McNeely* is a blood draw case; *Dansby*, *Lewis*, and the case before us are all arrest cases. The distinction is critical. As the Court of Criminal Appeals has explained, "a search [such as a blood draw] affects a person's privacy interests, whereas a seizure [such as an arrest] only affects a person's possessory interests and is generally less intrusive than a search." *Sanchez v. State*, 365 S.W.3d 681, 686 (Tex. Crim. App. 2012). This distinction is perhaps even more pronounced when the seizure compels a "physical intrusion beneath [a person]'s skin and into his veins." *See McNeely*, 569 U.S. at 148. "Such an invasion of bodily integrity implicates an individual's 'most personal and deep-rooted expectations of privacy.'" *Id.* (quoting *Winston v. Lee*, 470 U.S. 753, 760 (1985)).

Both *Lewis* and *Dansby* (and at least one other post-*McNeely* case)[5] implicitly recognize the crucial distinction between a warrantless blood draw and a warrantless arrest—and consequently *McNeely*'s inapplicability to the exigency requirement for a warrantless arrest—and continue to regard the need to preserve the time-sensitive evidence of a suspect's blood alcohol level as a valid exigency justifying a

---

[5]  *See also Polly v. State*, 533 S.W.3d 439, 443 (Tex. App.—San Antonio 2016, no pet.) (upholding warrantless arrest under article 14.03(a)(1) in part because circumstances called for immediate action by police to ascertain appellant's blood alcohol level).

16

warrantless arrest. *See Gallups*, 151 S.W.3d at 202. And these cases are consistent with the long-standing broader principle that the need to preserve any kind of evidence of a crime can be an exigency justifying a warrantless arrest. For example, in *Minassian v. State*, this Court held that that the possibility of the "immediate erasure of any evidence of wrongdoing provides the necessary exigency for an immediate arrest." *See* 490 S.W.3d 629, 639 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citing *Coyne v. State*, 485 S.W.2d 917, 919 (Tex. Crim. App. 1972)).

Here, the need to preserve evidence of McGuire's intoxication before its natural dissipation was not the only exigency presented: there was also an urgent need to preserve other evidence. This includes evidence of the accident—including the fender of the complainant's motorcycle lodged in the grille of McGuire's truck— the need for which was made immediate by the knowledge that McGuire had already fled the scene once, when he continued to drive instead of stopping after having crashed his truck into the complainant's motorcycle. The possibility that McGuire might again flee, taking with him evidence of the collision in addition to the blood evidence of his intoxication, established further exigence. *See Swain*, 181 S.W.3d at 366–67 (holding that appellant who admitted to beating victim and leaving her at remote location was found at suspicious place, where "[g]iven appellant's nervous behavior and his admission that he had been involved in a crime, it was reasonable to believe that appellant would not remain at the residential treatment home if the

17

officers left to obtain a warrant"); *Minassian*, 490 S.W.3d at 639 (holding that possibility that suspect would escape and destroy evidence contained on laptop computers constituted exigent circumstances under suspicious place exception); *cf. Villalobos*, 2018 WL 2307740, at *6 (holding that appellant's warrantless arrest was justified under suspicious place exception where appellant was found near scene of accident and "needed to be detained because he had fled the scene of that accident"); *Cribley*, 2005 WL 1812585, at *2 (holding that warrantless arrest of suspected hit-and-run driver was justified under suspicious place exception where police found her at home shortly after she had fled scene). And this concern would have been heightened by McGuire's emotional reaction to seeing the destroyed motorcycle.

In any event, the totality of the circumstances presented in this case establishes exigence even under *McNeely*, which noted that the need to preserve evidence of a suspect's blood alcohol level is but one factor to consider in assessing the totality of the circumstances. *See* 569 U.S. at 165 ("[T]he metabolization of alcohol in the bloodstream and the ensuing loss of evidence are among the factors that must be considered in deciding whether a warrant is required."); *id.* at 153 ("We do not doubt that some circumstances will make obtaining a warrant impractical such that the dissipation of alcohol from the bloodstream will support an exigency justifying a properly conducted warrantless blood test."); *see also Weems v. State*, 493 S.W.3d 574, 580–81 (Tex. Crim. App. 2016) (holding that *McNeely* does not require courts

"to turn a blind eye to alcohol's evanescence and the body's natural dissipation of alcohol in [their] calculus of determining whether exigency existed"; courts still must consider "alcohol's natural dissipation over time (and the attendant evidence destruction) the antagonizing factor central to law enforcement's decision whether to seek a warrant or proceed with a warrantless seizure").

Indeed, the Court of Criminal Appeals has cautioned against an approach that would reduce findings of exigency "to an exceedingly and inappropriately small set of facts" and thus "defeat a claim of exigency on the basis of a single circumstance in direct opposition to the totality-of-circumstances review *McNeely* requires." *Cole v. State*, 490 S.W.3d 918, 926 (Tex. Crim. App. 2016) (holding that availability of other officers on scene to obtain warrant is relevant but not sole consideration in exigency analysis for warrantless blood draw). In addition to immediacy, the United States Supreme Court has recognized that a totality of the circumstances analysis of exigency may include consideration of "the gravity of the underlying offense for which the arrest is being made." *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984); *see also State v. Villarreal*, 475 S.W.3d 784, 857 (Tex. Crim. App. 2014) (Yeary, J., dissenting) (noting, in dissenting to denial of State's motion for rehearing, that "as the gravity of the offense increases, so too does the need to preserve, not just some evidence of intoxication, but the very best evidence that may reasonably be obtained"). McGuire stands accused of committing the grave offense of intoxication

19

manslaughter. Clearly, the consequences of losing evidence of such a serious crime make it "all the more imperative that the best evidence of intoxication not be lost in the time it usually takes to secure a warrant." *Villarreal*, 475 S.W.3d at 843.

Thus, even though I disagree with the majority's conclusions that *McNeely* applies to warrantless arrests and that section 14.03(a)(1) requires an exigency finding, I would hold that the State's evidence established exigency beyond the need to preserve evidence of McGuire's blood alcohol level, based on the totality of circumstances, including the undisputed fact that McGuire left the scene of the crash and the need to preserve evidence of his truck's collision with the complainant's motorcycle. *See, e.g.*, *Cole*, 490 S.W.3d at 927 ("[L]aw enforcement was confronted with not only the natural destruction of evidence through natural dissipation of intoxicating substances, but also with the logistical and practical constraints posed by a severe accident involving a death and the attendant duties this accident demanded. We therefore conclude that exigent circumstances justified [appellant]'s warrantless blood draw."); *see also State v. Keller*, No. 05-15-00919-CR, 2016 WL 4261068, at *5 (Tex. App.—Dallas Aug. 11, 2016, no pet.) (mem. op., not designated for publication) ("Evaluating the totality of the circumstances here, we conclude the warrantless blood draw was constitutionally permissible under exigency principles . . . [L]aw enforcement was confronted with not only the natural destruction of evidence through natural dissipation of intoxicating substances, but

20

also with the logistical and practical constraints posed by a potentially fatal accident and the necessity of securing the site and protecting the public. We therefore conclude that the warrantless blood draw did not violate the Fourth Amendment and the trial court erred in concluding a violation occurred.").

On this record, the totality of the circumstances show that McGuire's warrantless arrest was justified under the suspicious place exception because the troopers needed to preserve evidence both of the level of alcohol in McGuire's blood, regardless of the separate search warrant required to draw blood, and of the state of McGuire's vehicle, with a portion of the complainant's motorcycle lodged in it, shortly after the accident.

## Conclusion

I would hold that because the State proved that McGuire's warrantless arrest was justified under the Code of Criminal Procedure article 14.03(a)(1), the trial court abused its discretion in granting the motion to suppress the evidence obtained as a result of the arrest.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Landau.

Keyes, J., dissenting.

Publish. TEX. R. APP. P. 47.2(b).

21